In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-03-00043-CV


______________________________




MIGUEL DE JULIAN, Appellant



V.



KERIC HAMMOCK, Appellee




 


On Appeal from the 123rd Judicial District Court


Panola County, Texas


Trial Court No. 2000-A-067-A




 




Before Morriss, C.J., Ross and Carter, JJ.


Memorandum Opinion by Justice Carter



MEMORANDUM OPINION



 Miguel De Julian sued Keric Hammock and Jacob Dewayne Smith for injuries caused when
Smith allegedly shot De Julian in the eye with a BB gun while at Hammock's apartment complex. 
The trial court granted Hammock's motion for summary judgment and ordered De Julian's claims
against Hammock severed from the claims against Smith. De Julian appeals that award of summary
judgment. For the reasons set forth below, we affirm the trial court's judgment in favor of
Hammock.

I. Background

 In 1999, De Julian lived at Hammock's apartment complex in Carthage, Texas. According
to De Julian's original petition, on October 1, 1999, Smith (age nineteen at the time) was roaming
the apartment complex randomly shooting at people with his BB gun. During the shooting,
De Julian was shot in the eye. De Julian lost an eye as a result of his injuries. De Julian sued Smith,
as the alleged shooter, for the intentional tort and Hammock, as the apartment complex owner, for
negligence in failing to keep the apartment complex safe from Smith's alleged criminal act. 

 Hammock moved for summary judgment on the bases that he (1) owed no duty to De Julian,
and (2) could not have foreseen or prevented the harm caused by Smith's alleged conduct. According
to the record, Smith has yet to be served with the petition and cannot be found. 



II. Did the trial court err by granting summary judgment for the property owner?

 In his first point of error, De Julian contends the trial court erred by granting Hammock's
motion for summary judgment. Generally, a person has no legal duty to protect others from the
criminal conduct of a third party. Walker v. Harris, 924 S.W.2d 375, 377 (Tex. 1996). Nor do
property owners have a duty to regularly inspect criminal records to determine the risk of crime in
an area. Timberwalk Apartments, Partners, Inc. v. Cain, 972 S.W.2d 749, 759 (Tex. 1998). 

 De Julian's second amended petition alleged Hammock owed a duty to prevent Smith's
criminal conduct because Hammock (a) accepted Smith as a resident in Hammock's house, and
Smith was known to have a violent and criminal history, without adequately providing for the safety
of those who would come in contact with Smith; (b) made a BB gun available to Smith, who was
known to have a tendency toward violence, a lack of impulse control, and a lack of the character and
skills necessary to handle a BB gun safely; (c) allowed Smith to possess a BB gun on Hammock's
residence premises when Smith was known to have a tendency toward violence, a lack of impulse
control, and a lack of the character and skills necessary to handle a BB gun; (d) failed to adequately
supervise Smith to prevent him from shooting De Julian; (e) failed to call police for assistance and
protection; (f) failed to warn De Julian of Smith's violent and irresponsible nature; (g) failed to
require Smith to leave the premises when Smith's behavior became violent; and (h) failed to protect
invitees on the premises from Smith's criminal acts when Hammock knew or had reason to know
of an unreasonable risk of harm to invitees. 

 Hammock moved for summary judgment alleging he owed no duty to De Julian absent a
foreseeable risk of harm. Hammock claimed he could not have foreseen Smith would shoot people
with a BB gun. The trial court agreed. A duty exists only when the risk of criminal conduct is so
great that it is unreasonable and foreseeable. Id. at 756.

 The Texas Supreme Court recently addressed the test used to determine whether a premises
owner may be held liable for another's criminal conduct.

 When we consider whether a particular criminal act was so foreseeable and
unreasonable as to impose a duty upon a landowner, we first examine the particular
criminal conduct that occurred in light of "specific previous crimes on or near the
premises." Walker, 924 S.W.2d at 377. If, after applying the Timberwalk factors of
similarity, recency, frequency, and publicity, see Timberwalk, 972 S.W.2d at 756-57,
we determine that the general danger of the criminal act was foreseeable, we then
apply the second prong of the foreseeability analysis and determine whether it was
foreseeable that the injured party, or one similarly situated, would be the victim of
the criminal act. In essence, we consider whether the plaintiff was within the range
of the defendant's apprehension such that her injury was foreseeable. See Palsgraf,
162 N.E. at 99-100. Only when we have analyzed the criminal act within the context
in which it occurred can we determine whether the landowner owed a duty to the
injured party. See, e.g., Centeq Realty, Inc. v. Siegler, 899 S.W.2d 195, 197 (Tex.
1995) (when determining whether a duty lies, we must consider all "the facts
surrounding the occurrence in question").


Mellon Mortgage Co. v. Holder, 5 S.W.3d 654, 656-57 (Tex. 1999). 

 In Timberwalk, a resident sued her apartment complex after she was raped by an intruder. 
Timberwalk Apartments, Partners, Inc., 972 S.W.2d at 751. The resident alleged the apartment
complex negligently failed to provide adequate security. Id. The facts of Timberwalk do not suggest
that the convicted rapist was related to a member of Timberwalk's management team or that any
other type of close relationship existed between the assailant and Timberwalk. Thus, Timberwalk's
test (as reiterated by Mellon Mortgage Co., 5 S.W.3d at 656-57, requiring evidence of criminal
activity on or near the premises before the alleged crime causing the injuries at issue) impliedly
assumes the assailant and the apartment management did not have a familial relationship between
them. That assumption, however, does not apply in the case now before us. 

 Hammock and Smith were uncle and nephew, respectively, although the familiarity each had
with the other is a question of fact not resolved by the court below. When it is claimed a premises
owner should have foreseen a criminal act by a relative, we must examine the extent of the relative's
prior criminal conduct before determining what the premises owner knew or should have known. 
Cf. Timberwalk Apartments, Partners, Inc., 972 S.W.2d at 757 (whether such risk was foreseeable
must be determined in light of what the premises owner knew or should have known before a
criminal act occurred).

 When reviewing a summary judgment, we take as true all evidence favorable to the
nonmovant and indulge every reasonable inference and resolve any doubts in the nonmovant's favor.
Limestone Prods. Distrib., Inc. v. McNamara, 71 S.W.3d 308, 311 (Tex. 2002); Rhone-Poulenc, Inc.
v. Steel, 997 S.W.2d 217, 223 (Tex. 1999). On appeal, the movant must show there is no material
fact issue and the movant is entitled to judgment as a matter of law. Rhone-Poulenc, Inc., 997
S.W.2d at 223.

 Summary judgment is proper when the movant establishes there is no genuine issue of
material fact and he or she is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); City
of Houston v. Clear Creek Basin Auth., 589 S.W.2d 671 (Tex. 1979); Baubles & Beads v. Louis
Vuitton, S.A., 766 S.W.2d 377 (Tex. App.-Texarkana 1989, no writ). The question on appeal is not
whether the summary judgment proof raises a fact issue with reference to the essential elements of
the plaintiff's cause of action, but whether the summary judgment proof establishes that the movant
is entitled to summary judgment as a matter of law. Gonzalez v. Mission Am. Ins. Co., 795 S.W.2d
734, 736 (Tex. 1990). Because the movant bears the burden of proof, all conflicts in the evidence
are disregarded, evidence favorable to the nonmovant is taken as true, and all doubts as to the
genuine issue of material fact are resolved in favor of the nonmovant. Nixon v. Mr. Prop. Mgmt.
Co., 690 S.W.2d 546 (Tex. 1985). 

 In his motion for summary judgment, Hammock contends it was not foreseeable Smith would
commit the criminal act of shooting De Julian with a BB gun. De Julian submitted an affidavit from
Ken Walker to support De Julian's opposition to the summary judgment motion. Walker's affidavit
suggests Smith had prior involvement with the juvenile justice system, but it fails to detail the
specifics of any alleged juvenile adjudications. (1) Stated differently, Walker's affidavit does not
specifically suggest Smith's delinquent conduct was for assaultive behavior. In contrast, there was
other evidence before the trial court that Smith's involvement with the juvenile justice system was
for the nonassaultive offenses of criminal mischief and criminal trespass. See Tex. Pen. Code Ann.
§§ 28.03, 30.05 (Vernon 2003). We further note Smith was nineteen years old at the time of the
incident at issue in this case, and the State may only prosecute someone as a juvenile for acts he or
she committed before reaching the age of seventeen. (2) Tex. Fam. Code Ann. § 51.02(2) (Vernon
2002). This suggests that any alleged contact with the juvenile justice system would have occurred
at least three years before the incident at issue. Additionally, there is no evidence in the record of
any alleged adult criminal conduct by Smith (other than the shooting at issue). (3) Accordingly, there
was no evidence Hammock either knew of or should have known of any recent assaultive conduct
committed by Smith. See Timberwalk Apartments, Partners, Inc., 972 S.W.2d at 758 (complete
absence of previous crimes negates the foreseeability element). De Julian's summary judgment
evidence failed to satisfy his burden under the first prong of Timberwalk. The trial court did not err
by granting Hammock's motion for summary judgment.


III. Did the trial court err by failing to postpone consideration of Hammock's motion for
summary judgment?


 In his second point of error, De Julian contends the trial court should have postponed
consideration of the summary judgment motion to allow De Julian or the police more time to locate
Smith. (4) De Julian claims he needed to depose Smith to show it was foreseeable for Hammock to
anticipate Smith's criminal conduct. Walker's affidavit did not suggest how much additional time
De Julian would need to locate and depose Smith. 

 A trial court may continue a hearing on a motion for summary judgment if it appears from
the evidence presented to the court that the party opposing the motion cannot present by affidavit
"facts essential to justify his opposition." Tex. R. Civ. P. 166a(g). Granting such a continuance is
not mandatory, but permissive. Id. We will not overturn a trial court's decision to grant or deny a
motion for continuance absent a showing the trial court abused its discretion. Parker v. Dodge, 98
S.W.3d 297, 302 (Tex. App.-Houston [1st Dist.] 2003, no pet.). 

 "When a party contends that it has not had an adequate opportunity for discovery before a
summary judgment hearing, it must file either an affidavit explaining the need for further discovery
or a verified motion for continuance." Id. (citing Tenneco, Inc. v. Enter. Prods. Co., 925 S.W.2d
640, 647 (Tex. 1996); and referencing Tex. R. Civ. P. 166a(g), 251, and 252)). In his affidavit,
Walker explained that efforts to obtain Smith's criminal history had been unsuccessful because both
Smith's juvenile and adult criminal records were sealed. Walker claimed, "Until such time as Smith
can be found for deposition, or until such time as the juvenile records and pre-sentence investigation
report is [sic] unsealed, Plaintiff cannot produce affidavits or other summary judgment proof
concerning Smith's criminal history." The affidavit further stated, "there is no way to investigate
what Defendant Hammock might have known about Smith's prior history until Plaintiff can discover
what there is to know." The affidavit fails, however, to give any basis for the trial court to weigh the
materiality of the requested discovery or the length of the continuance that would be needed. Cf.
Carter v. MacFadyen, 93 S.W.3d 307, 310 (Tex. App.-Houston [14th Dist.] 2002, pet. denied). We
also note the plaintiff filed his suit on May 1, 2000; the trial court did not grant summary judgment
until almost three years later, on December 31, 2003. Given the lengthy period of time available for
discovery and the lack of specificity of time De Julian was seeking to have the hearing continued so
Smith could be located and deposed, we do not believe the trial court abused its discretion by
denying a continuance. We overrule De Julian's second point of error.

 For the reasons stated, we affirm the trial court's judgment.


 

 Jack Carter

 Justice


Date submitted: August 25, 2003

Date decided: August 26, 2003




OPINION ON REHEARING


 Miguel De Julian has filed a motion for rehearing in which he points out that his affidavit
alleged this episode occurred over a period of one and one-half hours. He alleges that, during that
time, Jacob Dewayne Smith began shooting at chickens and later at tenants, that some tenants were
shouting at Smith, and that another tenant was shot by the BB gun in the back of the head thirty
minutes prior to his injury. De Julian alleges that Keric Hammock was inside his home and argues
that these events should have been heard by Hammock and that he should have taken action to
prevent the harm to him.

 An owner or controller of premises does have a duty to use ordinary care to protect invitees
from criminal acts of third parties if he or she knows or has reason to know of an unreasonable and
foreseeable risk of harm to the invitee. Timberwalk Apartments, Partners, Inc. v. Cain, 972 S.W.2d
749, 756 (Tex. 1998). The foreseeability of an unreasonable risk of criminal conduct is a
prerequisite to imposing a duty of care to a person who owns or controls premises to protect others
on the property from the risk. When the risk is of injury from criminal activity, the evidence must
reveal specific previous crimes on or near the premises to establish foreseeability. Id. 

 De Julian relies on the same episode of offensive conduct by Smith to establish: (1) that De
Julian was injured, and (2) that Hammock had reason to know of an unreasonable and foreseeable
risk of harm to De Julian. We do not believe the same series of events that led to De Julian's injury
can be used to provide notice to Hammock of "previous" crimes and thereby raise an issue of
foreseeability of this injury.

 The motion is overruled.





 Jack Carter

 Justice


Date: September 8, 2003



1. In fact, Walker's affidavit states he does not know the specific contents of Smith's juvenile
record because it is sealed and Smith cannot be located so as to enable an investigation of his prior
criminal history.
2. The Timberwalk court acknowledged that criminal conduct occurring farther from the
landowner's property may activate a duty by the landowner to prevent similar harm, "[b]ut such
evidence must be especially strong, and must show that the risk of criminal conduct on the
landowner's property is not merely increasing but has reached a level as to make crime likely." 
Timberwalk Apartments, Partners, Inc. v. Cain, 972 S.W.2d 749, 757 (Tex. 1998).
3. There is also no evidence in the record before us of any other, general criminal activity at
Hammock's apartment complex or in the surrounding vicinity from which the trial court might have
inferred the likelihood of an assault similar to what happened in the case now before us.
4. De Julian's summary judgment response incorporates hearsay evidence suggesting the State
had issued a warrant for Smith's arrest for violating the terms and conditions of his adult community
supervision. 


-style-locked:yes;
 mso-style-link:"Balloon Text";
 mso-ansi-font-size:8.0pt;
 mso-bidi-font-size:8.0pt;
 font-family:"Tahoma","sans-serif";
 mso-ascii-font-family:Tahoma;
 mso-hansi-font-family:Tahoma;
 mso-bidi-font-family:Tahoma;}
span.FootnoteTextChar
 {mso-style-name:"Footnote Text Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Footnote Text";
 mso-ansi-font-size:10.0pt;
 mso-bidi-font-size:10.0pt;
 font-family:"Times New Roman","serif";
 mso-ascii-font-family:"Times New Roman";
 mso-fareast-font-family:Calibri;
 mso-fareast-theme-font:minor-latin;
 mso-hansi-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";}
span.HeaderChar
 {mso-style-name:"Header Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Header;
 mso-ansi-font-size:12.0pt;
 mso-bidi-font-size:12.0pt;
 font-family:"Times New Roman","serif";
 mso-ascii-font-family:"Times New Roman";
 mso-hansi-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";}
span.FooterChar
 {mso-style-name:"Footer Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Footer;
 mso-ansi-font-size:12.0pt;
 mso-bidi-font-size:12.0pt;
 font-family:"Times New Roman","serif";
 mso-ascii-font-family:"Times New Roman";
 mso-hansi-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";}
span.SpellE
 {mso-style-name:"";
 mso-spl-e:yes;}
.MsoChpDefault
 {mso-style-type:export-only;
 mso-default-props:yes;
 mso-ascii-font-family:Calibri;
 mso-ascii-theme-font:minor-latin;
 mso-fareast-font-family:"Times New Roman";
 mso-fareast-theme-font:minor-fareast;
 mso-hansi-font-family:Calibri;
 mso-hansi-theme-font:minor-latin;
 mso-bidi-font-family:"Times New Roman";
 mso-bidi-theme-font:minor-bidi;}
.MsoPapDefault
 {mso-style-type:export-only;
 margin-bottom:10.0pt;
 line-height:115%;}
 /* Page Definitions */
 @page
 {mso-page-border-surround-header:no;
 mso-page-border-surround-footer:no;
 mso-footnote-separator:url("6-11-068-CV%20Ritchey%20v.%20Pinnells%20FINAL%20mtd_files/header.htm") fs;
 mso-footnote-continuation-separator:url("6-11-068-CV%20Ritchey%20v.%20Pinnells%20FINAL%20mtd_files/header.htm") fcs;
 mso-endnote-separator:url("6-11-068-CV%20Ritchey%20v.%20Pinnells%20FINAL%20mtd_files/header.htm") es;
 mso-endnote-continuation-separator:url("6-11-068-CV%20Ritchey%20v.%20Pinnells%20FINAL%20mtd_files/header.htm") ecs;}
@page WordSection1
 {size:8.5in 11.0in;
 margin:1.0in 1.0in 1.0in 1.0in;
 mso-header-margin:1.0in;
 mso-footer-margin:1.0in;
 mso-even-header:url("6-11-068-CV%20Ritchey%20v.%20Pinnells%20FINAL%20mtd_files/header.htm") eh1;
 mso-header:url("6-11-068-CV%20Ritchey%20v.%20Pinnells%20FINAL%20mtd_files/header.htm") h1;
 mso-even-footer:url("6-11-068-CV%20Ritchey%20v.%20Pinnells%20FINAL%20mtd_files/header.htm") ef1;
 mso-footer:url("6-11-068-CV%20Ritchey%20v.%20Pinnells%20FINAL%20mtd_files/header.htm") f1;
 mso-first-header:url("6-11-068-CV%20Ritchey%20v.%20Pinnells%20FINAL%20mtd_files/header.htm") fh1;
 mso-first-footer:url("6-11-068-CV%20Ritchey%20v.%20Pinnells%20FINAL%20mtd_files/header.htm") ff1;
 mso-paper-source:0;}
div.WordSection1
 {page:WordSection1;}
@page WordSection2
 {size:8.5in 11.0in;
 margin:2.0in 1.0in 1.0in 1.0in;
 mso-header-margin:2.0in;
 mso-footer-margin:1.0in;
 mso-even-header:url("6-11-068-CV%20Ritchey%20v.%20Pinnells%20FINAL%20mtd_files/header.htm") eh1;
 mso-header:url("6-11-068-CV%20Ritchey%20v.%20Pinnells%20FINAL%20mtd_files/header.htm") h1;
 mso-even-footer:url("6-11-068-CV%20Ritchey%20v.%20Pinnells%20FINAL%20mtd_files/header.htm") ef1;
 mso-footer:url("6-11-068-CV%20Ritchey%20v.%20Pinnells%20FINAL%20mtd_files/header.htm") f2;
 mso-first-header:url("6-11-068-CV%20Ritchey%20v.%20Pinnells%20FINAL%20mtd_files/header.htm") fh1;
 mso-first-footer:url("6-11-068-CV%20Ritchey%20v.%20Pinnells%20FINAL%20mtd_files/header.htm") ff1;
 mso-paper-source:0;}
div.WordSection2
 {page:WordSection2;}
-->











 
 
 
 
 
 
 




 

 

 

 

 

 

 

 

 

                                                         In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-11-00068-CV

                                                ______________________________

 

 

                                       BRENDA RITCHEY,
Appellant

 

                                                                V.

 

                       STEVE PINNELL AND AMY PINNELL, Appellees

 

 

                                                                                                  


 

 

                                      On Appeal from the 402nd
Judicial District Court

                                                             Wood County, Texas

                                                          Trial Court
No. 2008-195

 

                                                        
                                          

 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                                        Opinion by Justice Moseley








                                                                   O P I N I O N

 

            Brenda
Ritchey purchased a house in Winnsboro, Texas, from Steve and Amy Pinnell pursuant to a sales agreement that provided that
Ritchey accepted the property as is. 
Prior to sale, Steve (who was licensed neither as a plumber nor an
electrician) had remodeled the house, doing most of the electrical work and all
of the plumbing work himself without obtaining permits from the City of
Winnsboro.  After the sale had been
completed, Ritchey was unable to obtain a certificate of occupancy from the City
because Pinnells electrical and plumbing work failed
to comply with building code requirements. 
With no such certificate of occupancy, Ritchey was barred by municipal
authorities from occupying the house.  Ritchey
filed suit against the Pinnells for statutory real
estate fraud,[1]
alleging that the Pinnells failure to disclose in
the statutorily mandated sellers disclosure notice that the repairs to the
house made by Steve violated building code requirements amounted to
misrepresentation or concealment of a material fact.  The Pinnells moved
for summary judgment, arguing that the as is clause in the purchase agreement
defeated the reliance element of statutory real estate fraud.  The trial court granted the Pinnells motion for summary judgment and entered a take-nothing
judgment.

            On
appeal, Ritchey contends that the trial court erred by granting the Pinnells summary judgment because there is evidence of
fraud, thereby negating the as is clause. 


            We
reverse the summary judgment and remand the case to the trial court for further
proceedings because there is evidence that Steve may have known that his
repairs failed to meet building code requirements.            

            The
Pinnells motion for summary judgment was of the traditional
sort.  To prevail on a traditional motion
for summary judgment, a movant must establish that
there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.  Tex. R.
Civ. P. 166a(c); Fort Worth
Osteopathic Hosp., Inc. v. Reese,
148 S.W.3d 94, 99 (Tex. 2004); City of
Houston v. Clear Creek Basin Auth., 589 S.W.2d 671 (Tex. 1979).  To gain a traditional summary judgment, the Pinnells must either conclusively negate at least one
element of each of Ritcheys claims for statutory real estate fraud or plead
and conclusively establish each element of an affirmative defense to the claim
against them.  Sci. Spectrum, Inc. v. Martinez, 941 S.W.2d 910, 911 (Tex. 1997).  Because the movant
for a summary judgment bears the burden of proof, all conflicts in the evidence
are disregarded, evidence favorable to the nonmovant
is taken as true, and all doubts as to the genuine issues of material fact are
resolved in favor of the nonmovant.  Nixon
v. Mr. Prop. Mgmt. Co., 690 S.W.2d 546 (Tex. 1985); see Limestone Prods. Distrib., Inc. v. McNamara, 71 S.W.3d 308, 311
(Tex. 2002); RhonePoulenc, Inc. v. Steel, 997 S.W.2d 217, 223
(Tex. 1999).

            In
her sole point of error, Ritchey argues that the trial court erred by granting
the summary judgment because there is evidence of fraud, in that the Pinnells made material misrepresentations in the sellers
disclosure notice,[2] and
she relied on those misrepresentations in entering into the as is sales
agreement.  In other words, Ritchey
maintains that she was fraudulently induced to enter into the purchase
agreement that contained the as is clause.

            Under
the terms of the purchase agreement, Ritchey agreed to purchase the property as
is.  Citing Prudential Insurance Co. of America v. Jefferson Assocs., Ltd., the
Pinnells contend that the as is clause in the
purchase agreement defeats the reliance element of statutory fraud as a matter
of law.  896 S.W.2d 156, 16162 (Tex.
1995); Bynum v. Prudential Residential Servs., Ltd. Pship, 129
S.W.3d 781, 796 (Tex. App.Houston [1st Dist] 2004, pet. denied).  However, an as is clause is not binding on
a purchaser if it is the product of a fraudulent representation or concealment
of information by the seller.  Prudential Ins. Co. of Am., 896 S.W.2d at 16162.  A fraudulent misrepresentation occurs when the
maker knew it was false when he made it or made it recklessly without knowledge
of the truth.  Id. at 163.  

            The
Pinnells disclosure statement to Ritchey states, in
relevant part, that they were unaware of, [r]oom
additions, structural modifications, or other alterations or repairs made
without necessary permits or not in compliance with building codes in effect at
the time.  

            It
is undisputed that some of the electrical and plumbing work done on the house
by Steve were not performed in compliance with the applicable building codes
and that the repairs were made without the necessary permits.  The Pinnells
maintain that the disclosure statement is not a misrepresentation because, at
the time of the disclosure, they were unaware that the statements were false.[3]  However, more than a year prior to executing
the sellers disclosure as a part of the sale of the house to Ritchey, Steve
had applied to the City for a permit to build or repair a fence on a different
property in Winnsboro.  The application
for that building permit was a form which contained a statement that the
applicant represented to the City that the applicant was familiar with all ordinances,
rules and regulations of the City of Winnsboro relating to building and
premises.[4]  

            In
support of its argument, the Pinnells cite to Prudential Insurance Co. of America,
where a buyer purchased a commercial building as is, and later sued the
seller, claiming that the seller failed to disclose the presence of asbestos in
the building.  896 S.W.2d 156.  There was no evidence that the seller was
actually aware of the presence of asbestos in the building or that it made an
affirmative move to conceal the presence of asbestos.  The Supreme Court of Texas held the as is
clause in the purchase agreement precluded the buyer from proving that the
sellers conduct caused the buyer harm because the seller had no duty to
disclose facts it did not know and that it could not be liable for failing to
disclose what it only should have known. 
Id. at 162. 

            The
Pinnells also cite to Bynum, where the sellers sold a house after representing in the
sellers disclosure notice that they were unaware of any problems with the
house and that no improvements were made without the necessary permits.  129 S.W.3d at 786.  The buyers discovered problems with the
dwellings improvements and that those improvements had been made without the
necessary permits.  Id. at 78788.  The trial
court held that the as is clause in the sales agreement exculpated the
sellers even if the sellers had heard of building permits, declined to obtain
civic association approval, and had failed to inquire as to the qualifications
of the contractor who was used, because there was still insufficient evidence
to raise a fact issue regarding whether the sellers had actual knowledge that
the remodeling was done without the necessary permits.  Id.
at 79192.  

            Prudential Insurance Co. of America is
distinguishable from the current case because the buyer in this case was
clearly and explicitly relying on the sellers disclosure notice, while the
buyer in Prudential acknowledged
purchasing the property while not relying on any representation, statement or
other assertion with respect to the [p]roperty
condition, but [was] relying on its examination of the [p]roperty.  Id.
at 160.  Bynum is also inapplicable to the present case because here there
is evidence that the sellers were aware of the citys building ordinances,
rules and regulations, and therefore would have been aware of the failure to
obtain a permit as well as the works failure to comply with the building code.

            We
are required to take all evidence favorable to Ritchey as true and resolve all
doubts as to genuine issues of material fact in Ritcheys favor.  Nixon,
690 S.W.2d 546.  Here, Steves application
for a fence permit supports (very slightly) Ritcheys argument that at the time
the disclosure notice was made, the Pinnells knew the
building ordinances, rules, and regulations, and would have been aware that
their disclosure representation regarding the repairs, permits and compliance
with building codes was false.  A
genuine issue of material fact exists if more than a scintilla of evidence
establishing the existence of the challenged element is produced.  Ford
Motor Co. v. Ridgway, 135 S.W.3d 598, 600 (Tex. 2004).  Evidence that is so weak as to do no more
than create a mere surmise or suspicion that the fact exists is less than a
scintilla.  Kroger Tex., Ltd. Pship v. Suberu, 216 S.W.3d
788, 793 (Tex. 2006) (quoting Ford Motor
Co., 135 S.W.3d at 601).  Although
the evidence presented by Ritchey is just barely more than a scintilla, we
determine that it is enough to create a fact question. 

            Accordingly,
we reverse the summary judgment and remand the case to the trial court for
further proceedings. 

 

 

                                                                        Bailey
C. Moseley

                                                                        Justice

 

Date Submitted:          December 12, 2011

Date Decided:             January 10, 2012

 











[1]Ritchey
also filed a claim for breach of contract, but in Ritchey v. Pinnell, 324 S.W.3d 815 (Tex. App.Texarkana
2010, no pet.), we affirmed the trial courts granting of summary judgment as
to the breach of contract claims and reversed the summary judgment as to
Ritcheys claims of real estate fraud. 





[2]Section
5.008 of the Texas Property Code requires the seller of a residential property
to deliver to the potential buyer a sellers disclosure notice describing the
character, improvements, and condition of the property.  Tex.
Prop. Code Ann. § 5.008 (West Supp. 2011).





[3]Steve
indicated that he believed that permits for such work were not required if the
repairs were performed by the owner and that he was unaware that his work did
not meet building code requirements.

 





[4]The
statement was not qualified or otherwise limited to the specific subject of the
building permit, fencing.