

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-08-00082-CV
_____

FRANK KEATHLEY, INDIVIDUALLY, AND
D/B/A TOP SHELF ANTIQUES, Appellant

V.

J.J. INVESTMENT COMPANY, L.T.D., Appellee

On Appeal from the 62nd Judicial District Court
Franklin County, Texas
Trial Court No. 10,072

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Justice Carter

MEMORANDUM OPINION

_____Frank Keathley, Individually and doing business as Top Shelf Antiques (hereafter referred to as Keathley) appeals a trial court's summary judgments in favor of J.J. Investment Company, L.T.D. (hereafter referred to as J.J. Investment), the Michael W. Jordan Dynasty Trust, the J. Dale Jordan Dynasty Trust, the Sonny Joe Roberts Dynasty Trust, Jack Dale Jordan and Michael W. Jordan (collectively referred to as Jordan Business). J.J. Investment was granted a judgment against Keathley for damages and Jordan Business was granted a judgment that Keathley take nothing on his counterclaims. Because we determine that genuine issues of material fact exist as to the terms of an alleged contract between the parties, we reverse the trial court's summary judgments.[1]

## I.      Standard of Review

We employ a de novo review of the trial court's grant of a summary judgment, which is based on written pleadings and written evidence rather than live testimony. TEX. R. CIV. P. 166a(c); *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). Summary judgment was proper if J.J. Investment established there were no genuine issues of material fact such that it was entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Nixon v. Mr. Prop. Mgmt. Co.*, 690

_____

[1]J.J. Investment brought suit against Keathley, who answered and filed counterclaims against J.J. Investment and Jordan Business. Initially, only J.J. Investment filed a traditional motion for summary judgment. The trial court entered an order in which it found the "Plaintiff's motion is GRANTED," without specifying the amount of damages. Later, both J.J. Investment and Jordan Business filed motions for summary judgment against Keathley. The trial court granted J.J. Investment damages and attorney's fees and granted Jordan Business a judgment denying Keathley's remaining counterclaims.

S.W.2d 546, 548 (Tex. 1985); *Baubles & Beads v. Louis Vuitton, S.A.*, 766 S.W.2d 377 (Tex. App.—Texarkana 1989, no writ). During our analysis of the traditional motion, and in deciding whether there is a disputed material fact issue which precludes summary judgment, we take evidence favorable to Keathley as true and resolve all doubts in his favor. *Limestone Prods. Distrib., Inc. v. McNamara*, 71 S.W.3d 308, 311 (Tex. 2002); *Rhone-Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 223 (Tex. 1999); *Nixon*, 690 S.W.2d at 548.[2]

## II.     Genuine Issues of Material Fact Existed at the Summary Judgment Stage

J.J. Investment owned an antique business called Mama Jean's Antiques. The store was run by Jack and Michael Jordan's mother. After her death, the Jordans decided to sell the store inventory. They orally agreed to allow Keathley to sell inventory on eBay and receive a thirty-five-percent commission for his efforts. While J.J. Investment claimed it only allowed Keathley to sell 210 items on a trial basis, Keathley claimed the agreement was for him to sell the entire contents of the store. When Keathley returned to Mama Jean's Antiques after selling the first trailer load, J.J. Investment declined to allow him to sell additional inventory because he "ha[d] not furnished an accounting nor payment . . . for any items that had been sold." Thereafter, Keathley provided a list of sold items, which allegedly reflected a loss to J.J. Investment.

---

[2]Even though J.J. Investment and Jordan Business filed pleadings purportedly containing motions for no-evidence summary judgments, they do not set out the essential elements of the causes of action pled and consequently do not state the elements for which Keathley has presented no evidence. *See* TEX. R. CIV. P. 166a (i). Therefore, we construe the motions as traditional motions for summary judgment.

J.J. Investment filed suit against Keathley seeking a sum of money equivalent to the amount of gross sales made by Keathley, less his commission, reasonable attorney's fees, and an order instructing Keathley to return the unsold antiques and a borrowed trailer. Keathley filed an answer denying these allegations and asserted breach of contract counterclaims against J.J. Investment and Jordan Business. In his answer, Keathley claimed that the contract was for the sale of all store inventory, not merely 210 items, that J.J. Investment and Jordan Business provided him with a listing of all of the store inventory, and "proposed that the inventory be sold over a 1 to 1 ½ year period in order to avoid depressing the prices to be received by flooding the market." In reliance of this agreement, Keathley claimed he purchased a large amount of supplies and would lose a substantial amount of income if he was not allowed to sell all of the inventory. He alleged that the Jordans agreed to arrange a time and place for pickup of the next installment of inventory items, but never did. Finally, Keathley alleged that the Jordans breached the oral agreement.

J.J. Investment and Jordan Business seized on the language in the answer that the inventory was to be sold over a period exceeding one year. They filed what were labelled as traditional and no-evidence summary judgment motions; but, instead of arguing they were entitled to judgment upon their own claim, they only argued that the statute of frauds rendered Keathley's version of the oral agreement unenforceable.[3] In support of their summary judgment motions, J.J. Investment and

---

[3]The statute of frauds provides that an agreement which is not to be performed within one year is not enforceable unless it is in writing and signed by the person to be charged. TEX. BUS. & COM. CODE ANN. § 26.01 (Vernon 2009).

4

Jordan Business attached a list of items with a total sales price of $64,210.25 and an affidavit of attorney's fees. They also attached limited excerpts of Keathley's deposition testimony only demonstrating that while he believed it would take anywhere from one to two years to sell all the inventory, Jordan Business could "get rid of it all at once." J.J. Investment and Jordan Business failed to attach any evidence regarding their version of the agreement or understanding between the parties. Specifically, there was no evidence demonstrating Keathley and Jordan Business agreed only one trailer load would be sold.

In response to the motions for summary judgment, Keathley again replied that there was a genuine issue of material fact as to whether the agreement was for him to sell all of the inventory or one trailer load. He also pointed out that there was no allegation of time period as to when the items were to be marketed, and there was a genuine issue as to whether the contract could be performed within one year. Keathley argued "[t]he fact that it may have been preferable to spread the sale over more than one year to maximize profits does not mean that it could not have been completed within one year." He further stated that even if the agreement was for sale of the entire inventory, and could not be completed in a year, his partial performance in reliance on the oral agreement would not render the contract unenforceable due to the statute of frauds. In support of his response, Keathley attached additional and more complete excerpts of his own deposition testimony recounting that the Jordans wanted to sell the whole store. The following excerpts support Keathley's version of events:

5

Q. Okay. Was there ever a discussion about the -- taking a limited number of items on a consignment for a trial basis?

A. No. Because I made that real point blank clear up front after we had gone through several false starts. . . . .

. . . .

Q. Okay. Was there a conversation with Lou Daniels about there was only supposed to be so many items taken that day and did you ask Lou to call Dale and ask to take more items to make a trailer load, to fill the trailer?

A. I know that I took several hundred items out that day. I started loading things up. Lou said something to me about a few pieces, and I said, that's not the deal I have with Dale. I'm selling the shop. I'm not driving up here for a couple of items at a time or we'll be doing this for the next forty years.

. . . .

A. . . . I mean, it was obvious at that point he had made up his mind that I was going to sell everything in the store.

. . . .

Q. . . . How many total items did you think that you were going to sell, or how many total items was in the building? You took 225. How many were left, do you think?

A. Oh, thousands.

. . . .

Q. Okay. Your plan was to come up and take a trailer load at a time?

A. Right.

Q. Go put them on eBay and sell them --

6

A.      Right.

Q.      -- come back and get another trailer load, take them and put them on eBay and sell it --

A.      Correct.

In addition, Keathley attached an affidavit stating the contract was for him to sell the entire contents of the store, and in reliance thereof, he completed all of his other sales activities and agreed to devote all of his time and effort to the liquidation of Mama Jean's inventory. Keathley stopped attending auctions to purchase his own inventory and cancelled "buying trips." He contacted a Houston auctioneer to make arrangements for auction of the inventory and made plans for a "satellite broadcast worldwide eBay auction" which could have sold the entire store contents in one or two weekends. Auction assistant Michael Whelchel also executed an affidavit stating Keathley contacted him about the internet auction which would only be scheduled for two days.

The key question to be decided was whether this oral contract was a sale of one load of goods or for the sale of the entire inventory of the business. Before there may be any application of the defense provided by the statute of frauds, the terms of the contract must be established. Instead of addressing the central issue of what the terms of the agreement were, the trial court agreed with J.J. Investment's and Jordan Business' argument that the statute of frauds barred Keathley's breach of contract claim. Apparently, basing its decision only on the statute of frauds issue, the trial court granted summary judgment in favor of J.J. Investment, rendered a take-nothing judgment against Keathley on the counterclaims, and ordered Keathley to pay $41,763.00. In this, the trial court erred.

7

First, there was no evidence to grant J.J. Investment a traditional motion for summary judgment. Absent from the record is any evidence that the contract was for the sale of only one trailer load. The evidence, at most, presented genuine issues of material facts. When we take evidence favorable to Keathley as true and resolve all doubts in his favor, we find that J.J. Investment failed to prove the terms of the contract, the specified time for performance, that Keathley breached the contract, or what the damages resulting from any breach were, such that it was entitled to judgment as a matter of law. J.J. Investment simply did not meet its initial burden on its traditional motion for summary judgment.

Keathley presented evidence, which remained uncontroverted, that the contract was for the sale of the entire store inventory, that he acted in reliance of that agreement, and that J.J. Investment and Jordan Business breached that agreement by disallowing him the right to sell the entire inventory of the store. He further stated that he had sold $40,000.00 worth of merchandise, that the original purchase price of the entire store inventory was $947,292.00, and that he was to receive a thirty-five-percent commission.

Thus, the granting of J.J. Investment's traditional motion for summary judgment and awarding damages was erroneous. Further, without a finding supported by summary judgment evidence that the contract was for sale of one trailer load, it was premature to consider the application of the statute of frauds issue, especially since it was merely Jordan Business' defense to

8

Keathley's breach of contract claim.[4]  Consequently, the judgment granted to Jordan Business denying all of Keathley's claims was erroneous.

## III.    Conclusion

We reverse the summary judgments in favor of J.J. Investment and Jordan Business and remand the cause to the trial court for further proceedings.


                                        Jack Carter
                                        Justice


Date Submitted:      June 25, 2009
Date Decided:        July 9, 2009

---

[4]The terms of the contract were not established; material facts remained to be decided.  It is irrelevant if the statute of frauds rendered Keathley's version of the contract unenforceable until the terms of the contract are established.

9