In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-08-00082-CV


______________________________




FRANK KEATHLEY, INDIVIDUALLY, AND


D/B/A TOP SHELF ANTIQUES, Appellant


V.



J.J. INVESTMENT COMPANY, L.T.D., Appellee




 


On Appeal from the 62nd Judicial District Court


Franklin County, Texas


Trial Court No. 10,072




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Justice Carter



MEMORANDUM OPINION



 Frank Keathley, Individually and doing business as Top Shelf Antiques (hereafter referred
to as Keathley) appeals a trial court's summary judgments in favor of J.J. Investment Company,
L.T.D. (hereafter referred to as J.J. Investment), the Michael W. Jordan Dynasty Trust, the J. Dale
Jordan Dynasty Trust, the Sonny Joe Roberts Dynasty Trust, Jack Dale Jordan and Michael W.
Jordan (collectively referred to as Jordan Business). J.J. Investment was granted a judgment against
Keathley for damages and Jordan Business was granted a judgment that Keathley take nothing on
his counterclaims. Because we determine that genuine issues of material fact exist as to the terms
of an alleged contract between the parties, we reverse the trial court's summary judgments. (1) 

I. Standard of Review 

 We employ a de novo review of the trial court's grant of a summary judgment, which is based
on written pleadings and written evidence rather than live testimony. Tex. R. Civ. P. 166a(c); 
Valence Operating Co. v. Dorsett, 164 S.W.3d 656, 661 (Tex. 2005). Summary judgment was
proper if J.J. Investment established there were no genuine issues of material fact such that it was
entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); Nixon v. Mr. Prop. Mgmt. Co., 690
S.W.2d 546, 548 (Tex. 1985); Baubles & Beads v. Louis Vuitton, S.A., 766 S.W.2d 377 (Tex.
App.--Texarkana 1989, no writ). During our analysis of the traditional motion, and in deciding
whether there is a disputed material fact issue which precludes summary judgment, we take evidence
favorable to Keathley as true and resolve all doubts in his favor. Limestone Prods. Distrib., Inc. v.
McNamara, 71 S.W.3d 308, 311 (Tex. 2002); Rhone-Poulenc, Inc. v. Steel, 997 S.W.2d 217, 223
(Tex. 1999); Nixon, 690 S.W.2d at 548. (2) 

II. Genuine Issues of Material Fact Existed at the Summary Judgment Stage

 J.J. Investment owned an antique business called Mama Jean's Antiques. The store was run
by Jack and Michael Jordan's mother. After her death, the Jordans decided to sell the store
inventory. They orally agreed to allow Keathley to sell inventory on eBay and receive a thirty-five-percent commission for his efforts. While J.J. Investment claimed it only allowed Keathley to sell
210 items on a trial basis, Keathley claimed the agreement was for him to sell the entire contents of
the store. When Keathley returned to Mama Jean's Antiques after selling the first trailer load,
J.J. Investment declined to allow him to sell additional inventory because he "ha[d] not furnished
an accounting nor payment . . . for any items that had been sold." Thereafter, Keathley provided a
list of sold items, which allegedly reflected a loss to J.J. Investment. 

 J.J. Investment filed suit against Keathley seeking a sum of money equivalent to the amount
of gross sales made by Keathley, less his commission, reasonable attorney's fees, and an order
instructing Keathley to return the unsold antiques and a borrowed trailer. Keathley filed an answer
denying these allegations and asserted breach of contract counterclaims against J.J. Investment and
Jordan Business. In his answer, Keathley claimed that the contract was for the sale of all store
inventory, not merely 210 items, that J.J. Investment and Jordan Business provided him with a listing
of all of the store inventory, and "proposed that the inventory be sold over a 1 to 1 ½ year period in
order to avoid depressing the prices to be received by flooding the market." In reliance of this
agreement, Keathley claimed he purchased a large amount of supplies and would lose a substantial
amount of income if he was not allowed to sell all of the inventory. He alleged that the Jordans
agreed to arrange a time and place for pickup of the next installment of inventory items, but never
did. Finally, Keathley alleged that the Jordans breached the oral agreement. 

 J.J. Investment and Jordan Business seized on the language in the answer that the inventory
was to be sold over a period exceeding one year. They filed what were labelled as traditional and
no-evidence summary judgment motions; but, instead of arguing they were entitled to judgment upon
their own claim, they only argued that the statute of frauds rendered Keathley's version of the oral
agreement unenforceable. (3) In support of their summary judgment motions, J.J. Investment and
Jordan Business attached a list of items with a total sales price of $64,210.25 and an affidavit of
attorney's fees. They also attached limited excerpts of Keathley's deposition testimony only
demonstrating that while he believed it would take anywhere from one to two years to sell all the
inventory, Jordan Business could "get rid of it all at once." J.J. Investment and Jordan Business
failed to attach any evidence regarding their version of the agreement or understanding between the
parties. Specifically, there was no evidence demonstrating Keathley and Jordan Business agreed
only one trailer load would be sold. 

 In response to the motions for summary judgment, Keathley again replied that there was a
genuine issue of material fact as to whether the agreement was for him to sell all of the inventory or
one trailer load. He also pointed out that there was no allegation of time period as to when the items
were to be marketed, and there was a genuine issue as to whether the contract could be performed
within one year. Keathley argued "[t]he fact that it may have been preferable to spread the sale over
more than one year to maximize profits does not mean that it could not have been completed within
one year." He further stated that even if the agreement was for sale of the entire inventory, and could
not be completed in a year, his partial performance in reliance on the oral agreement would not
render the contract unenforceable due to the statute of frauds. In support of his response, Keathley
attached additional and more complete excerpts of his own deposition testimony recounting that the
Jordans wanted to sell the whole store. The following excerpts support Keathley's version of events:

 Q. Okay. Was there ever a discussion about the -- taking a limited
number of items on a consignment for a trial basis?


 A. No. Because I made that real point blank clear up front after we had
gone through several false starts. . . . .

 

 . . . .


 Q. Okay. Was there a conversation with Lou Daniels about there was
only supposed to be so many items taken that day and did you ask Lou to call Dale
and ask to take more items to make a trailer load, to fill the trailer?


 A. I know that I took several hundred items out that day. I started loading
things up. Lou said something to me about a few pieces, and I said, that's not the deal
I have with Dale. I'm selling the shop. I'm not driving up here for a couple of items
at a time or we'll be doing this for the next forty years.


 . . . .


 A. . . . I mean, it was obvious at that point he had made up his mind that
I was going to sell everything in the store. 

 

 . . . .


 Q. . . . How many total items did you think that you were going to sell,
or how many total items was in the building? You took 225. How many were left,
do you think? 


 A. Oh, thousands. 


 . . . .


 Q. Okay. Your plan was to come up and take a trailer load at a time?


 A. Right. 


 Q. Go put them on eBay and sell them --


 A. Right. 


 Q. -- come back and get another trailer load, take them and put them on
eBay and sell it --


 A. Correct.


 In addition, Keathley attached an affidavit stating the contract was for him to sell the entire
contents of the store, and in reliance thereof, he completed all of his other sales activities and agreed
to devote all of his time and effort to the liquidation of Mama Jean's inventory. Keathley stopped
attending auctions to purchase his own inventory and cancelled "buying trips." He contacted a
Houston auctioneer to make arrangements for auction of the inventory and made plans for a "satellite
broadcast worldwide eBay auction" which could have sold the entire store contents in one or two
weekends. Auction assistant Michael Whelchel also executed an affidavit stating Keathley contacted
him about the internet auction which would only be scheduled for two days. 

 The key question to be decided was whether this oral contract was a sale of one load of goods
or for the sale of the entire inventory of the business. Before there may be any application of the
defense provided by the statute of frauds, the terms of the contract must be established. Instead of
addressing the central issue of what the terms of the agreement were, the trial court agreed with
J.J. Investment's and Jordan Business' argument that the statute of frauds barred Keathley's breach
of contract claim. Apparently, basing its decision only on the statute of frauds issue, the trial court
granted summary judgment in favor of J.J. Investment, rendered a take-nothing judgment against
Keathley on the counterclaims, and ordered Keathley to pay $41,763.00. In this, the trial court erred. 

 First, there was no evidence to grant J.J. Investment a traditional motion for summary
judgment. Absent from the record is any evidence that the contract was for the sale of only one
trailer load. The evidence, at most, presented genuine issues of material facts. When we take
evidence favorable to Keathley as true and resolve all doubts in his favor, we find that
J.J. Investment failed to prove the terms of the contract, the specified time for performance, that
Keathley breached the contract, or what the damages resulting from any breach were, such that it was
entitled to judgment as a matter of law. J.J. Investment simply did not meet its initial burden on its
traditional motion for summary judgment. 

 Keathley presented evidence, which remained uncontroverted, that the contract was for the
sale of the entire store inventory, that he acted in reliance of that agreement, and that J.J. Investment
and Jordan Business breached that agreement by disallowing him the right to sell the entire inventory
of the store. He further stated that he had sold $40,000.00 worth of merchandise, that the original
purchase price of the entire store inventory was $947,292.00, and that he was to receive a thirty-five-
percent commission.

 Thus, the granting of J.J. Investment's traditional motion for summary judgment and
awarding damages was erroneous. Further, without a finding supported by summary judgment
evidence that the contract was for sale of one trailer load, it was premature to consider the
application of the statute of frauds issue, especially since it was merely Jordan Business' defense to
Keathley's breach of contract claim. (4) Consequently, the judgment granted to Jordan Business
denying all of Keathley's claims was erroneous. 

III. Conclusion 

 We reverse the summary judgments in favor of J.J. Investment and Jordan Business and
remand the cause to the trial court for further proceedings. 




 Jack Carter

 Justice


Date Submitted: June 25, 2009

Date Decided: July 9, 2009


1. J.J. Investment brought suit against Keathley, who answered and filed counterclaims against
J.J. Investment and Jordan Business. Initially, only J.J. Investment filed a traditional motion for
summary judgment. The trial court entered an order in which it found the "Plaintiff's motion is
GRANTED," without specifying the amount of damages. Later, both J.J. Investment and Jordan
Business filed motions for summary judgment against Keathley. The trial court granted
J.J. Investment damages and attorney's fees and granted Jordan Business a judgment denying
Keathley's remaining counterclaims.
2. Even though J.J. Investment and Jordan Business filed pleadings purportedly containing
motions for no-evidence summary judgments, they do not set out the essential elements of the causes
of action pled and consequently do not state the elements for which Keathley has presented no
evidence. See Tex. R. Civ. P. 166a (i). Therefore, we construe the motions as traditional motions
for summary judgment. 
3. The statute of frauds provides that an agreement which is not to be performed within one
year is not enforceable unless it is in writing and signed by the person to be charged. Tex. Bus. &
Com. Code Ann. § 26.01 (Vernon 2009). 
4. The terms of the contract were not established; material facts remained to be decided. It is
irrelevant if the statute of frauds rendered Keathley's version of the contract unenforceable until the
terms of the contract are established. 


to the necessary harm analysis. 

 We reiterate: Smith was aware of his right, as shown by his action of expressly waiving the
right in one case, while striking through the waiver language in the second. The cases were tried
together, and the clear assumption and behavior of all parties, including counsel, court, and
defendant, reflects that they expected punishment to be determined by the trial court rather than by
a jury. 

 Pursuant to the reasoning used by the Texas Court of Criminal Appeals in Johnson, which
we are obligated to follow, we likewise find in this case that Smith was fully aware of his right to
a jury trial on the issue of punishment in this case; thus, no harm has been shown.

 We conclude that, under these facts, Smith's substantial rights were not violated by the error. 
The contention is overruled.

Reformation

 Smith also contends that the conviction in this appeal, trial cause number 21441, contains
an error: it incorrectly reflects a conviction for delivery of cocaine of four to 200 grams, when it
should have stated "less than one gram." The indictment alleges delivery of cocaine in an amount
less than one gram. 

 During the plea proceeding, the two cases were entangled by court and counsel. The court
admonished Smith that the range of punishment for the possession case (which was the four to 200
gram case) was two to ten years and that the range of punishment for the delivery (less than one
gram) was five to ninety-nine years or life in prison. The correct range was five to ninety-nine years
or life for the possession case (a first-degree felony), and two to ten years for the delivery (a third-degree felony). When Smith was ultimately sentenced by the court, the proper ranges were utilized
for the correct offenses. However, the judgment itself is incorrect, as is acknowledged by the State.

 We have the authority to correct and reform a judgment to make the record speak the truth. 
See French v. State, 830 S.W.2d 607 (Tex. Crim. App. 1992). Accordingly, we reform the judgment
in this case to delete the language stating that Smith was convicted for delivery of a controlled
substance between four and 200 grams in a drug-free zone, and reform the judgment to state that he
was convicted of delivery of a controlled substance, less than one gram, in a drug-free zone.

 As reformed, we affirm the judgment.


 Bailey C. Moseley

 Justice



DISSENTING OPINION

 The Texas Court of Criminal Appeals in Johnson held that the failure of the defendant to sign
a written waiver of jury trial is not harmful error when the record shows the defendant was aware
of such right and waived it. Johnson v. State, 72 S.W.3d 346, 349 (Tex. Crim. App. 2002). The
effect of the Johnson opinion is that a written document is not the exclusive way to evidence waiver
of a jury trial. In this case, the record shows that Smith knew of his jury trial rights because he
signed a form in which it appears he waived such right as to the guilt/innocence trial. However, the
fact that he knew of the right does not supply evidence that he waived that right. In fact, the record
shows that he specifically refused to waive his jury trial right as to punishment by affirmatively
marking out that part of the printed form. Further, the fact that he signed a written waiver of jury
trial as to both guilt and punishment in another case weighs against a finding of waiver in this case. 
If anything, it shows that he intended to waive a jury trial in both guilt and punishment stages of the
first trial, but here he specifically preserved his right to a jury trial for punishment. 

 In Johnson, the Texas Court of Criminal Appeals noted that the judgment recited a waiver
of jury trial and declared that such a recitation was binding in the absence of direct proof to the
contrary. Id. Here, such a recitation is in the judgment, but direct contrary proof is in the
record--the waiver of jury trial as to punishment has been marked out. We simply do not have
evidence that Smith waived his statutory right to a jury trial on punishment. The error cannot be
considered harmless. I would reverse the case for a new punishment trial. 

 I respectfully dissent from the majority opinion. 



 Jack Carter

 Justice


Date Submitted: February 26, 2007

Date Decided: April 17, 2007


Publish

1. The companion case is also being appealed and bears this Court's case number 06-06-00187-CR.
2. Texas also has both a constitutional right to a jury trial and a statutory right to a jury trial. 
Tex. Const. art. I, § 10; Tex. Code Crim. Proc. Ann. arts. 1.12, 1.13, 1.14, 1.15 (Vernon 2005),
art. 37.07 (Vernon 2006). However, the Texas constitutional right to a jury trial does not include the
right to have the jury assess punishment. Martin v. State, 753 S.W.2d 384, 389 (Tex. Crim. App.
1988); Martinez v. State, 66 S.W.3d 467, 471 (Tex. App.--Houston [1st Dist.] 2001, pet. ref'd).
3. We recognize that a sentencing scheme is proscribed by the United States Constitution based
upon the right to trial by jury if it allows a judge to impose a sentence above the statutory maximum
based on a fact, other than a prior conviction, not found by a jury or admitted by the defendant. See
Cunningham v. California, ___ U.S. ___, 166 L.Ed.2d 856, 864 (2007). Those considerations are
not before us.
4. It is noted that the portions of the document containing the waivers of the right to confront
and cross-examine witnesses, as well as the consent to stipulation of evidence, are stricken through.