

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-23-00316-CV

**35 BAR & GRILL LLC** d/b/a San Antonio Men's Club,
Appellant

v.

**TEXAS ALCOHOLIC BEVERAGE COMMISSION**,
Appellee

From the 131st Judicial District Court, Bexar County, Texas
Trial Court No. 2023-CI-04177
Honorable Rosie Alvarado, Judge Presiding

Opinion by:    Beth Watkins, Justice

Sitting:    Patricia O. Alvarez, Justice
Irene Rios, Justice
Beth Watkins, Justice

Delivered and Filed:  February 14, 2024

AFFIRMED

Appellant 35 Bar & Grill d/b/a San Antonio Men's Club (the Club) challenges the trial court's judgment affirming an administrative order of the Texas Alcoholic Beverage Commission. We affirm the trial court's judgment.

## BACKGROUND

The Club, which described itself below as a "bikini latex" club, employed women to entertain customers by performing stage, table, and lap dances. The Club formerly held two permits issued by TABC: a mixed beverage permit and a mixed beverage late hours permit.

In 2018, 2020, and 2021, TABC conducted several undercover investigations at the Club. During these investigations, TABC agents observed what they believed to be multiple violations of the Texas Alcoholic Beverage Code, including prostitution, improper drink solicitation, employment of a minor in a sexually oriented business, and a failure to obtain a permit required by the City of San Antonio for sexually oriented businesses.

On April 15, 2021, TABC sent the Club a Notice of Violation alleging nineteen violations of the Alcoholic Beverage Code. TABC subsequently amended its Notice of Violation several times; at the time of the administrative hearing on the merits in this matter, the notice alleged thirty-five violations. On March 3 and 4, 2022, the Club and TABC appeared for a contested hearing before an Administrative Law Judge, and both sides presented witness testimony, documentary evidence, and written closing arguments. In its pre-hearing filings, its written closing argument, and its post-hearing motions, the Club argued TABC's allegations should be dismissed because the agency spoliated evidence.

On June 13, 2022, the ALJ issued a Proposal for Decision recommending cancellation of the Club's permits. The ALJ found, inter alia: (1) three dancers employed by the Club "committed prostitution in the course of the Club's business"; (2) the Club "knew of the likelihood of prostitution occurring on its premises" and "should have taken further reasonable steps . . . to prevent prostitution on the premises"; and (3) the Club failed to establish that TABC spoliated evidence or that any sanction was appropriate.

The Club filed written exceptions to the ALJ's findings of fact and conclusions of law, but the ALJ declined to make any changes to its proposal. With one partial dissent,[1] a panel of TABC

---

[1] The dissenting commissioner disagreed with the ALJ's conclusion that an administrative agency may not resolve constitutional questions. He did not indicate that he disagreed with any of the ALJ's other findings or conclusions.

commissioners approved the ALJ's proposal and issued an order cancelling the Club's permits. The Club filed a motion for rehearing, which the commissioners overruled.

The Club sought judicial review of the order cancelling its permits. On March 22, 2023, the trial court signed a judgment affirming the order. The Club timely filed a notice of appeal.

## ANALYSIS

The Club raises five issues challenging the district court's affirmation of the order cancelling the Club's permits. Our analysis is limited to the issues necessary to dispose of this appeal. *See* TEX. R. APP. P. 47.1.

### *Standard of Review*

Judicial review of the cancellation of a permit issued under the Alcoholic Beverage Code is conducted under the substantial evidence rule. TEX. ALCO. BEV. CODE ANN. § 11.67(b). Under this standard, a trial court "may not substitute its judgment for the judgment of the state agency on the weight of the evidence on questions committed to agency discretion[.]" TEX. GOV'T CODE ANN. § 2001.174. The court may affirm the administrative agency's order in whole or in part, but shall reverse or remand for further proceedings if the complaining party establishes that its substantial rights were prejudiced by an agency finding, inference, conclusion, or decision that was:

(A) in violation of a constitutional or statutory provision;

(B) in excess of the agency's statutory authority;

(C) made through unlawful procedure;

(D) affected by other error of law;

(E) not reasonably supported by substantial evidence considering the reliable and probative evidence in the record as a whole; or

(F) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

*Id.* § 2001.174(1), (2). We presume the administrative agency's findings, inferences, conclusions, and decisions are supported by substantial evidence, "and the burden is on the contestant to prove otherwise." *Tex. Comm'n on Env't Quality v. Maverick County*, 642 S.W.3d 537, 547 (Tex. 2022) (internal quotation marks omitted).

The appropriate test "is whether the evidence as a whole is such that reasonable minds could have reached the conclusion that the agency must have reached in order to justify its action." *Tex. Alcoholic Beverage Comm'n v. Sierra*, 784 S.W.2d 359, 360 (Tex. 1990) (per curiam) (internal quotation marks omitted). "Substantial evidence requires only more than a scintilla, and the evidence on the record may actually preponderate against the decision of the agency and nonetheless amount to substantial evidence." *Mireles v. Tex. Dep't of Pub. Safety*, 993 S.W.2d 426, 428 (Tex. App.—San Antonio 1999), *aff'd*, 9 S.W.3d 128 (Tex. 1999) (per curiam). "The issue before us is not whether the agency reached the correct conclusion, but whether there is some basis in the record for its action." *Granek v. Tex. State Bd. of Med. Exam'rs*, 172 S.W.3d 761, 778 (Tex. App.—Austin 2005, no pet.).

### Spoliation

In its first issue, the Club challenges the ALJ's findings that TABC did not spoliate evidence and that "[n]o [spoliation] sanction is appropriate." The Club's assertions on this point focus on two kinds of evidence: (1) alcohol expenditure reports; and (2) text messages exchanged by TABC's undercover agents.

### Applicable Law

"To conclude that a party spoliated evidence, the court must find that (1) the spoliating party had a duty to reasonably preserve evidence, and (2) the party intentionally or negligently breached that duty by failing to do so." *Brookshire Bros., Ltd. v. Aldridge*, 438 S.W.3d 9, 14 (Tex. 2014). The party claiming spoliation bears the burden to establish these elements. *Id.* at 20. If the

trial court finds spoliation occurred, it "has broad discretion to impose a remedy that, as with any discovery sanction, must be proportionate; that is, it must relate directly to the conduct giving rise to the sanction and may not be excessive." *Id.* at 14. This analysis includes a consideration of "the level of culpability of the spoliating party and the degree of prejudice, if any, suffered by the nonspoliating party." *Id.* Because spoliation involves both evidentiary and discovery issues, the resolution of a spoliation claim falls "within the sole province of the trial court"—or, as here, the ALJ. *Id.* at 20; *TJFA, L.P. v. Tex. Comm'n on Env't Quality*, 632 S.W.3d 660, 670 (Tex. App.—Austin 2021, pet. denied).

*Application*

A.      Alcohol expenditure reports

TABC's undercover agents testified that they ordered and paid for alcoholic beverages during the investigations at the Club "to maintain cover." The Club argues that TABC spoliated reports showing these alcohol purchases. It further argues the alcohol expenditure reports were necessary for a meaningful cross-examination of the undercover agents and that TABC was obligated to disclose them.

The Club does not appear to have alleged, however, that TABC destroyed or failed to preserve the alcohol expenditure reports. For example, the Club's post-hearing motion to dismiss explicitly argued the reports were "known to have been created and existed . . . and there was no indication in the record that they were since lost or destroyed." Throughout this case, the Club's position has been that TABC had the reports in its possession but failed to produce them in response to the Club's discovery requests, and it repeats that argument in its appellate briefing.

A claim that responsive evidence exists but has been improperly withheld alleges ordinary discovery abuse, not spoliation. *See Brookshire Bros.*, 438 S.W.3d at 18 (describing spoliation as "when evidence is lost, altered, or destroyed"); *Reliant Hosp. Partners, LLC v. Cornerstone*

*Healthcare Grp. Holdings, Inc.*, 374 S.W.3d 488, 497 (Tex. App.—Dallas 2012, pet. denied) (defining spoliation as "the improper destruction of evidence") (internal quotation marks omitted). Accordingly, the record as a whole supports the ALJ's finding that TABC did not spoliate the alcohol expenditure reports. *See* TEX. GOV'T CODE § 2001.174(2)(E); *Brookshire Bros.*, 438 S.W.3d at 14.

Nevertheless, we must also consider the Club's argument that the ALJ's refusal to sanction TABC for the non-production of the alcohol expenditure reports violated the Club's constitutional right to cross-examination. *See* TEX. GOV'T CODE § 2001.174(2)(A). The Club contends that without the reports, it could not "challenge the agents' testimony regarding their levels of intoxication and the veracity of their perceptions and recollections." As the ALJ noted, however, the Club did not "request a continuance to try to get these documents before the hearing," but instead "chose to proceed to hearing without . . . the alcohol expenditure reports[.]" Additionally, the Club has not argued or shown that TABC's failure to produce the reports prevented the Club from subpoenaing its own witnesses—for example, the dancers involved in the alleged violations or the waitstaff who served alcohol to the agents—to rebut the agents' testimony about their alcohol consumption and the events that occurred during the investigations.

Furthermore, despite the Club's claim that it was denied a meaningful opportunity to cross-examine the undercover agents, the record shows it vigorously questioned them about their alcohol purchases and consumption, the contents and accuracy of their written reports, their recollection of the events that led to TABC's allegations, and purported inconsistencies in their reports and testimony. It also elicited concessions from the agents that there were no photographs, videos, or audio recordings to corroborate their testimony and that they were not "breath-tested" after the undercover investigations, and it emphasized those concessions in its closing argument. The agents testified, however, that the amount of alcohol they purchased was not indicative of the alcohol they

actually consumed; they are trained on how to avoid becoming intoxicated during undercover investigations; they were not intoxicated during these investigations; and they did not see any other agents who were intoxicated during the investigations. The ALJ had the sole authority to determine the agents' credibility on these issues. *See Granek*, 172 S.W.3d at 778; TEX. GOV'T CODE § 2001.174.

On this record, a reasonable person could have concluded, as the ALJ did, that no sanction was necessary to remedy any potential prejudice to the Club. *See Sierra*, 784 S.W.2d at 360; *TransAmerican Nat. Gas Corp. v. Powell*, 811 S.W.2d 913, 917 (Tex. 1991) (discovery abuse sanctions fall within "the sound discretion of the trial court" and must be directed "toward remedying the prejudice caused the innocent party"). The trial court therefore did not err by refusing to reverse TABC's order on this basis. *See* TEX. GOV'T CODE § 2001.174(2)(A), (E).

### B. Undercover agents' text messages

Unlike the alcohol expenditure reports, the Club argued both before and after the hearing on the merits that TABC failed to preserve text messages its agents exchanged during the undercover investigations. While the Club requested the production of text messages throughout this case, TABC did not produce any until shortly before the administrative hearing on the merits. The text message chain that TABC produced before the hearing included communications from multiple agents who participated in an October 28, 2021 undercover investigation, and they referred to the prostitution allegations involving one of the Club's dancers.

At the outset of the hearing on the merits, TABC represented to the ALJ that: (1) its failure to produce the text messages was not intentional; and (2) the text messages that were produced did not contain any information that had not already been disclosed to the Club. TABC also pointed out the Club "has not asked for a continuance because of" the late production of the text messages. The Club did not offer any response to these representations at that time.

During the hearing on the merits, the Club cross-examined TABC's agents about their use of text messages during the undercover investigations. Some of the agents testified that they exchanged text messages during the investigations, and they confirmed that they were not asked to preserve or turn over any text messages until shortly before the hearing on the merits. However, none of the agents testified about the existence of any text messages that had not been produced, and at least one agent specifically denied that he had intentionally tried to hide any messages or that there was any reason for him to do so. As with the agents' testimony about their alcohol consumption, the ALJ had the sole authority to determine their credibility on these issues. *See Granek*, 172 S.W.3d at 778; TEX. GOV'T CODE § 2001.174.

Based on this record, the ALJ could have rationally found that "the evidence failed to show that any text messages were missing or not preserved." *See Sierra*, 784 S.W.2d at 360; TEX. GOV'T CODE § 2001.174. Accordingly, the ALJ did not abuse its discretion by finding the Club did not meet its burden to show TABC spoliated relevant text messages. *See* TEX. GOV'T CODE § 2001.174(2); *Brookshire Bros.*, 438 S.W.3d at 14, 20. Because the ALJ did not abuse its discretion by rejecting the Club's assertion that spoliation occurred, it also did not abuse its discretion by finding that no sanctions were necessary. *See* TEX. GOV'T CODE § 2001.174(2); *Brookshire Bros.*, 438 S.W.3d at 14.

For these reasons, we overrule the Club's first issue.

### *Prostitution Allegations*

In its fifth issue, the Club challenges TABC's decision to cancel the Club's permits based on the ALJ's findings that the Club's dancers engaged in prostitution. The Club does not contend the evidence is insufficient to support the ALJ's findings that prostitution occurred. Instead, it argues the ALJ "wrongfully held [the Club] liable for its dancers' alleged crimes even though the dancers were acting well outside the scope of their employment and there was no evidence that

[the Club]'s principals knew or should have known about the dancers' activities." As support for this contention, it argues that former Rule 35.31 of the Texas Administrative Code did not permit cancellation of a permit unless the evidence showed the permit holder itself knew or should have known of the culpable conduct.

*Applicable Law*

The Alcoholic Beverage Code permits cancellation of a permit issued by TABC "if it is found, after notice and hearing, that . . . the place or manner in which the permittee conducts the permittee's business warrants the cancellation or suspension of the permit based on the general welfare, health, peace, morals, and safety of the people and on the public sense of decency." TEX. ALCO. BEV. CODE ANN. § 11.61(b)(7). The Alcoholic Beverage Code defines "permittee" as "a person who is the holder of a permit provided for in this code, *or an agent, servant, or employee of that person*." TEX. ALCO. BEV. CODE ANN. § 1.04(11) (emphasis added). Because this statutory definition is not ambiguous, we are required to apply it as it is written. *See Tex. Lottery Comm'n v. First State Bank of DeQueen*, 325 S.W.3d 628, 635 (Tex. 2010).

Former Rule 35.31 of the Texas Administrative Code applied to TABC's review of "offenses against the general welfare," including offenses that fell within section 11.61(b)(7) of the Alcoholic Beverage Code. 16 TEX. ADMIN. CODE § 35.31(a) (repealed June 6, 2022). Rule 35.31 provided that a permittee violated section 11.61(b)(7) of the Alcoholic Beverage Code if any of several enumerated offenses were committed:

(1) by the licensee or permittee in the course of conducting his/her alcoholic beverage business; or

(2) by any person on the license or permittee's licensed premises; and

(3) the licensee or permittee knew or, in the exercise of reasonable care, should have known of the offense or the likelihood of its occurrence and failed to take reasonable steps to prevent the offense.

16 TEX. ADMIN. CODE § 35.31(b) (repealed June 6, 2022). Rule 35.31 included prostitution in the list of enumerated offenses that constituted a violation of the Alcoholic Beverage Code. *Id.* § 35.31(c)(13) (repealed June 6, 2022) (listing enumerated offenses as including "any public indecency offense described in Chapter 43 of the Texas Penal Code"); TEX. PENAL CODE ANN. § 43.02(a) (defining prostitution).

*Application*

The Club contends that Rule 35.31(b) required a showing "that the principals named on the permit" knew or should have know about the dancers' misconduct before cancellation of the permits was warranted. It argues:

> Section 35.31(b)(1) is solely concerned with the principals' conduct of their own business, not the actions of anyone who does not hold a permit—such as an agent, servant, or employee. Sections 35.31(b)(2) and (b)(3), by contrast, do concern other people's conduct, *and* they require proof that the principals knew or should have known about that misconduct.

The Club contends that under Rule 35.31, it could not be liable for its dancers' conduct because TABC did not show that the dancers were acting in the scope of their employment when they engaged in prostitution.

The ALJ did not err by rejecting this position. Rule 35.31(b)(1) did not use the words "principal" or "permit holder"; it used the word "permittee." 16 TEX. ADMIN. CODE § 35.31(b) (repealed June 6, 2022). The Club has not pointed to any applicable provisions of the Texas Administrative Code that defined "permittee" differently than the Alcoholic Beverage Code. *Compare id.*, *with* TEX. ALCO. BEV. CODE § 1.04(11). As explained above, the Alcoholic Beverage Code's definition of "permittee" includes both the permit holder and an employee of the permit holder. TEX. ALCO. BEV. CODE § 1.04(11). The ALJ found the dancers were employees of the

Club, and the Club has not explicitly challenged that finding on appeal.[2] Because the dancers were the Club's employees, they met the statutory definition of "permittee" as a matter of law. *See id.*

Additionally, while the Club's witnesses testified that the dancers were not hired to provide sexual services, they also testified the dancers were hired "[t]o entertain customers at the club. . . . Do dances on stage, talk to them . . . keep them company." The evidence showed that while they were actively engaged in performing these tasks, two of the Club's dancers agreed to exchange sex for money in private rooms on the Club's premises, and a third dancer gave an undercover agent her phone number to facilitate a later, off-premises exchange of sex for money. One of TABC's agents testified that even the dancers who did not agree to have sex for money told him that "other girls might" and "I don't do that, but some of the other girls do." This evidence is more than a scintilla to support the ALJ's finding that the dancers "committed prostitution in the course of the Club's business." *See Mireles*, 993 S.W.2d at 428; *see also Sanchez v. Mulvaney*, 274 S.W.3d 708, 711 (Tex. App.—San Antonio 2008, no pet.) ("More than a scintilla of evidence exists if the evidence would allow reasonable and fair-minded people to differ in their conclusions.").

Finally, even if we accept the Club's assertion that Rule 35.31(b)(1) required a showing that the permit holders themselves knew or should have known about the dancers' misconduct, the evidence presented to the ALJ would allow a reasonable person to conclude TABC made that showing. *See Sierra*, 784 S.W.2d at 360. The Club itself argued below that "[p]rostitution is a hazard of this line of business, despite policies against the same, and active supervision of the

---

[2] During the administrative proceeding, the Club argued its dancers were independent contractors. The ALJ made detailed findings of fact in support of its conclusion that "the Club exercised control over the dancer's [*sic*] activities in many ways[.]" *See, e.g.*, *Limestone Prods. Dist., Inc. v. McNamara*, 71 S.W.3d 308, 312 (Tex. 2002) (per curiam) ("The test to determine whether a worker is an employee rather than an independent contractor is whether the employer has the right to control the progress, details, and methods of operations of the work.").

licensed premises." Despite this recognition that prostitution was a known hazard, the evidence showed the Club maintained a second floor VIP area with private rooms that "were secluded from everything else[.]" As noted above, the evidence showed that at least two of the Club's dancers agreed to receive a fee from an undercover agent to engage in sexual conduct in the private rooms. *See* TEX. PENAL CODE § 43.02(a). One undercover agent testified that his conversation with a dancer led him to believe the exchange of sex for money in the private rooms "was a normal thing and normal occurrence that happened there." TABC also presented evidence that the Club permitted a dancer to return to work after she was arrested for agreeing to have sex for money in a private room. The Club did not terminate that dancer's employment until after she was arrested a second time for committing prostitution on the premises.

Based on this evidence, the ALJ could have rationally inferred that the Club's principals: (1) knew or should have known about the existence of the private rooms; (2) knew or should have known that dancers used the private rooms for prostitution; and (3) failed to take reasonable steps to prevent that conduct. 16 TEX. ADMIN. CODE § 35.31(b), (c) (repealed June 6, 2022); TEX. PENAL CODE § 43.02(a); *Sierra*, 784 S.W.2d at 360. The ALJ therefore did not err by concluding the dancers' actions supported a finding that "the place or manner in which the permittee conducts the permittee's business warrants the cancellation or suspension of the permit based on the general welfare, health, peace, morals, and safety of the people and on the public sense of decency" by engaging in prostitution at the Club. TEX. ALCO. BEV. CODE § 11.61(b)(7); 16 TEX. ADMIN. CODE § 35.31(b) (repealed June 6, 2022).

We overrule the Club's fifth issue.

Having overruled the Club's spoliation arguments and concluded that the finding that the Club's dancers engaged in prostitution presents a basis to affirm the trial court's judgment, we need not address the Club's second, third, and fourth issues, which challenge the ALJ's findings

that the Club employed a minor and failed to obtain a municipal permit. *See* TEX. R. APP. P. 47.1; *Dyer v. Tex. Comm'n on Env't Quality*, 646 S.W.3d 498, 514 (Tex. 2022) ("If an agency's decision is based on sufficient underlying findings that are supported by substantial evidence, then unnecessary findings cannot render that decision reversible, even if those findings are improper.").

## CONCLUSION

We affirm the trial court's judgment.

Beth Watkins, Justice