LIMESTONE PRODUCTS
DISTRIBUTION, INC.,
Petitioner,

v.

Hershel Helen McNAMARA, individual-
ly and as next friend of A. M., a mi-
nor, and as independent executrix of
The Estate of Paul Tom McNamara,
and K. M., Respondents.

No. 01–0142.

Supreme Court of Texas.

Feb. 14, 2002.

Rehearing Overruled April 25, 2002.

Jerry P. Campbell, Waco, Keith C. Cameron, Austin, Naman Howell Smith & Lee, for Petitioner.

John Phillip Palmer, Waco, for Petitioner.

J. Robert Sheehy, Law Office of J. Robert Sheehy, Sr., Waco, for Respondent.

PER CURIAM.

Coy Mathis's car collided with Tom McNamara's motorcycle, causing McNamara fatal injuries. Here, the issue is whether, when the accident occurred, Mathis worked as Limestone Products Distribution, Inc.'s independent contractor, or, if Mathis was Limestone's employee, whether he was acting in the course and scope of his employment. McNamara's survivors sued Mathis and Limestone alleging that Mathis's negligence caused McNamara's death. Limestone moved for summary judgment, asserting that it is not liable for Mathis's negligence because he was an independent contractor when the accident occurred. Alternatively, Limestone argued that, if Mathis was an employee at the time the accident occurred, he was not acting in the course and scope of his employment. Without specifying the grounds, the trial court granted Limestone's motion.

On rehearing, a divided court of appeals reversed the summary judgment and remanded the case to the trial court. 39 S.W.3d 619. It determined that a fact issue existed on: (1) whether Mathis was an independent contractor or Limestone's employee; and (2) if Mathis was a Limestone employee, whether Mathis was on a special mission and thus acting in the course and scope of his employment when the accident occurred. 39 S.W.3d at 625.

The court of appeals correctly stated the law that applies in this case. However, the court of appeals improperly applied that law to the summary-judgment evidence and incorrectly resolved the independent contractor issue. Thus, we reverse the court of appeals' judgment and render judgment that McNamara's survivors take nothing from Limestone.

Limestone delivers limestone and other materials to various customers. Mathis began working for Limestone as an employee, driving a Limestone delivery truck. Because he was an employee, Limestone prescribed the specific route Mathis had to drive whenever he made a delivery. Limestone paid for gasoline, repairs, and insurance on the truck that Limestone owned and Mathis drove to make deliveries. Limestone paid Mathis twenty-five percent of the income received from each load Mathis hauled. Limestone reported Mathis's income on a W–2 form and withheld social security and federal income tax

payments from his paycheck. Additionally, Limestone covered Mathis on its workers' compensation insurance.

About three years before the accident occurred, Mathis bought a truck from Limestone and drove it as his own. After Mathis bought his truck, he was free to drive any route he wished when making a delivery as long as he timely delivered the load. Though he sometimes purchased gasoline from Limestone, Mathis—not Limestone—paid for his truck's gasoline, repairs, and insurance. Limestone compensated Mathis with eighty percent of the income from each load he delivered, rather than the twenty-five percent Limestone paid Mathis when he drove Limestone's truck as an employee. Limestone reported Mathis's income on a 1099 form rather than a W–2 form. Further, Mathis paid his own social security and federal income taxes and no longer received workers' compensation coverage from Limestone.

Some aspects of Mathis's work with Limestone were the same both before and after he bought his own truck. For instance, Mathis did not work regular hours. Instead, he called Limestone's office each morning to see if Limestone had any work for him that day. Mathis received no pay if there were no loads to haul. And he received no pay for vacation, sick leave, or holidays. Limestone instructed him where to pick up the load, where to deliver it, and what time it had to arrive. Moreover, for Limestone to bill its customers and for Mathis to receive his pay, Mathis submitted load tickets to Limestone for each job. He would either leave the tickets in the mailbox at the office, leave them in a mailbox at Limestone's entrance on Farm to Market Road 185, or hand deliver them to someone in the office. Mathis could submit the tickets daily or let them accumulate.

When the accident occurred, Mathis was driving his own car, not the truck he purchased from Limestone. Although Mathis did not have any loads to haul that day, he was driving to Limestone's property. When Mathis attempted to turn left off FM 185 onto Limestone's property, his car collided with Tom McNamara who was driving a motorcycle in the oncoming-traffic lane. McNamara's injuries were fatal. Immediately after the accident, Mathis stated that he was on his way to Limestone's office to deliver load tickets. But in his deposition, Mathis acknowledged that he actually had no load tickets to submit, and he was driving to Limestone's office to "kill time" and "see what was going on." However, Mathis stated that another Limestone driver who had load tickets to drop off at the office was in the car with Mathis.

Tom McNamara's widow ("McNamara"), individually and as independent executrix of McNamara's estate, sued Limestone and Mathis and alleged that Mathis's negligence proximately caused McNamara's death. McNamara alleged that Mathis was Limestone's employee engaged in the course and scope of his employment when the accident occurred. Limestone moved for summary judgment on the ground that Mathis was an independent contractor. Alternatively, Limestone asserted that if Mathis was an employee, he was not engaged in the course and scope of his employment when the accident occurred. The trial court granted Limestone's motion without specifying the grounds and severed McNamara's claims against Limestone from the claims against Mathis. McNamara appealed, claiming that summary judgment was not proper on either ground Limestone raised in its motion.

After reviewing the summary-judgment evidence, the court of appeals determined that Limestone did not conclusively prove

that Mathis was an independent contractor. 39 S.W.3d at 623. The court of appeals observed that, though there are "ample characteristics of an independent contractor relationship, there is some evidence that Limestone still controls enough of the aspects of the manner in which Mathis operates in delivering the materials for Limestone so as to raise a fact question on the issue." 39 S.W.3d at 623. The court of appeals then reviewed Limestone's alternative summary-judgment argument that, if Mathis was an employee, he was not acting in the course and scope of his employment when the accident occurred. The court of appeals determined that delivering load tickets was a normal part of Mathis's employment, and therefore, travel to and from his place of employment was not a "special mission." 39 S.W.3d at 624. Because of this, the court of appeals held that even if Mathis was Limestone's employee, Mathis was not acting in the course and scope of his employment. Accordingly, the court of appeals affirmed the trial court's summary judgment on that ground. 39 S.W.3d at 624.

On rehearing, the court of appeals changed its view on the course and scope of employment issue. The court of appeals believed it misapplied the summary-judgment appellate review standard by failing to "accept as true all evidence favorable to the non-movant" and failing to "resolve all doubts and indulge every reasonable inference in favor of the non-movant." 39 S.W.3d at 624. The court of appeals then held that the summary-judgment evidence created a fact issue about whether Mathis's delivering load tickets was a special mission and thus Mathis was acting in the course and scope of his employment. Accordingly, the court of appeals reversed the summary judgment and remanded the cause to the trial court. 39 S.W.3d at 625.

Limestone's petition for review raises two issues: (1) whether the court of appeals properly applied the law to the facts when it determined a fact question existed about Mathis's status as an employee or an independent contractor; and (2) whether, if Mathis was an employee, he was acting in the course and scope of his employment because he was on a special mission.

When reviewing a summary judgment, we take as true all evidence favorable to the nonmovant and indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Rhone–Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 223 (Tex.1999). On appeal, the movant must show there is no material fact issue and that the movant is entitled to judgment as a matter of law. *Rhone–Poulenc*, 997 S.W.2d at 223.

Limestone first argues that it is not liable for Mathis's negligence because he was an independent contractor. Limestone urges that many factors establish Mathis's independent-contractor status, including Mathis's: owning, paying for, and operating his own truck; paying for his own insurance and social security and federal income taxes; and receiving a 1099 form from Limestone to report his income. Moreover, Limestone points out that Mathis had considerable discretion in determining how to accomplish his work and in choosing which work to complete.

To the contrary, McNamara argues that Limestone and Mathis acknowledged that Mathis was an employee before he bought his truck, and that most aspects of Mathis's work remained the same after he bought it. McNamara asserts that the control Limestone exercised over Mathis did not change significantly after he bought the truck, and this control did not differ significantly from the control Limestone exercised over other drivers classi-

fied as employees. McNamara argues that Limestone drivers who did and did not own their own trucks all reported for work in the same way, received their instructions about where to pick up and drop off loads in the same way, and submitted load tickets in the same manner. Moreover, McNamara points out that, although Mathis was free to drive any route he chose to deliver a load, he usually took the same route that Limestone required its driver-employees take. McNamara also points out that Limestone continued to list Mathis as an employee in its computer records. McNamara contends these facts show Limestone considered him an employee and exercised control over the details of his work.

■ The test to determine whether a worker is an employee rather than an independent contractor is whether the employer has the right to control the progress, details, and methods of operations of the work. *Thompson v. Travelers Indem. Co.*, 789 S.W.2d 277, 278 (Tex.1990); *Farrell v. Greater Houston Transp. Co.*, 908 S.W.2d 1, 3 (Tex.App.-Houston [1st Dist.] 1995, writ denied). The employer controls not merely the end sought to be accomplished, but also the means and details of its accomplishment. *Thompson*, 789 S.W.2d at 278; *Darensburg v. Tobey*, 887 S.W.2d 84, 88 (Tex.App.-Dallas 1994, writ denied); *Travelers Ins. Co. v. Ray*, 262 S.W.2d 801, 803 (Tex.Civ.App.-Eastland 1953, writ ref'd). We measure the right to control by considering: (1) the independent nature of the worker's business; (2) the worker's obligation to furnish necessary tools, supplies, and materials to perform the job; (3) the worker's right to control the progress of the work except about final results; (4) the time for which the worker is employed; and (5) the method of payment, whether by unit of time or by the job. *Pitchfork Land & Cattle Co. v.*

*King*, 162 Tex. 331, 346 S.W.2d 598, 603 (1961); *Farrell*, 908 S.W.2d at 3; *see also Thompson*, 789 S.W.2d at 279; *United States Fid. & Guar. Co. v. Goodson*, 568 S.W.2d 443, 447 (Tex.Civ.App.-Texarkana 1978, writ ref'd n.r.e.).

■ The primary basis for McNamara's position that Mathis was an employee when the accident occurred is that the summary-judgment evidence shows that the nature of Mathis's work with Limestone remained substantially the same after he bought the truck. However, the legal test for determining independent-contractor status in Texas is right to control, not comparison of control. *See Thompson*, 789 S.W.2d at 278. The court of appeals acknowledged the right-to-control test as the proper legal standard to apply. 39 S.W.3d at 623. But it incorrectly applied this test to the facts to decide that a fact issue existed on Mathis's independent-contractor status.

■ When we apply the right-to-control test to the summary-judgment evidence here, we hold that it conclusively shows that Mathis was an independent contractor when the accident occurred. Although Limestone told Mathis where to pick up and drop off loads, and Mathis had to turn in his load tickets to get paid, he had broad discretion in how to do everything else. Mathis was free to drive any route he wished when delivering for Limestone as long as he timely delivered the load. Mathis did not work regular hours and did not have to visit the office on a regular basis. Moreover, Limestone supplied no tools or equipment to Mathis. Instead, Mathis owned and used his own truck for deliveries, and he paid for his truck's gasoline, repairs, and insurance. Limestone paid Mathis by the load he delivered, and he received no pay if there was no work. Limestone reported Mathis's income on a 1099 form, not a W-2 form. Also, Lime-

stone did not pay Mathis for vacation, sick leave, or holidays. And Mathis paid his own social security and federal income taxes.

Although some of these factors may not, alone, be enough to demonstrate a worker's independent-contractor status, together they provide conclusive summary-judgment evidence that Mathis was an independent contractor and not Limestone's employee when the accident occurred. *See Thompson,* 789 S.W.2d at 279; *Pitchfork Land & Cattle Co.,* 346 S.W.2d at 603; *Farrell,* 908 S.W.2d at 3; *Goodson,* 568 S.W.2d at 447. In other words, the summary-judgment evidence establishes that Limestone merely controlled the end sought to be accomplished—determining where and when to deliver the load—whereas Mathis controlled the means and details of accomplishing the work. *See Thompson,* 789 S.W.2d at 278; *Darensburg,* 887 S.W.2d at 88; *Travelers Ins. Co.,* 262 S.W.2d at 803; *see also Eagle Trucking Co. v. Texas Bitulithic Co.,* 612 S.W.2d 503, 508 (Tex. 1981) (construction company was not liable for negligence of driver who hauled sand when company "had no more than the power to direct the place sand was to be loaded and the place it was to be unloaded...."). Thus, the trial court correctly granted Limestone summary judgment on this ground.

The court of appeals also incorrectly applied the law to the facts to decide that a fact issue exists on the course and scope issue. However, because we hold that the summary-judgment evidence conclusively proves Mathis was an independent contractor and not Limestone's employee, we need not discuss the second ground Limestone raised in its summary-judgment motion. Accordingly, without hearing oral argument, we reverse the court of appeals' judgment and render judgment that

McNamara take nothing from Limestone. Tex.R.App. P. 59.1.