**Reversed and Remanded and Opinion filed February 21, 2019.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-17-00433-CV

---

### ROBERT STEVENSON, Appellant

### V.

### WASTE MANAGEMENT OF TEXAS, INC. AND RIGOBERTO ZELAYA, Appellees

---

**On Appeal from the 113th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2014-60538**

---

## O P I N I O N

In this personal-injury case, a worker hired by a temporary-employment supplier suffered serious injuries while performing tasks for one of the supplier's clients. The trial court granted summary judgment dismissing the worker's negligence claim against the client on the ground that the Workers' Compensation Act's exclusive-remedy provision bars the worker's negligence claims. Concluding that the summary-judgment evidence raises a genuine issue of material fact as to whether the worker served as the client's "employee" under this statute, we reverse and remand.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In May 2014, appellant/plaintiff Robert Stevenson was working as a helper on a garbage truck when appellee/defendant Rigoberto Zelaya, the driver of the truck, backed the truck up and drove it over Stevenson's right foot and leg. At the time of the accident Zelaya worked as an employee of appellee/defendant Waste Management of Texas, Inc., and Stevenson worked for non-party Taylor Smith Consulting, LLC, a temporary labor supplier. Taylor Smith had assigned Stevenson to work at Waste Management on a temporary basis under the terms of a "Master Agreement." According to Stevenson, consistent with the Master Agreement, he served as an independent contractor — not as an employee — of Waste Management.

Stevenson sued Waste Management and Zelaya asserting that Zelaya was negligent, among other things, in failing to keep a proper lookout for Stevenson's safety, failing to take proper action to avoid a collision with Stevenson, backing up the truck when it was unsafe to do so, and failing to maintain proper control of the vehicle. Stevenson alleged that Zelaya acted in the course and scope of his employment with Waste Management so that Waste Management stood liable for Zelaya's negligence under the doctrine of *respondeat superior*. Stevenson also claimed that Waste Management negligently hired, trained, supervised, and retained Zelaya as its employee.

Waste Management and Zelaya (collectively the "Waste Management Parties") filed a motion for traditional summary judgment on the sole ground that the exclusive-remedy provision of the Texas Workers' Compensation Act (the "Act") bars Stevenson's claims against them because at the time of Stevenson's injury he was an employee of Waste Management covered by Waste Management's workers' compensation insurance. Stevenson does not dispute that

2

Waste Management had workers' compensation insurance covering its employees; he asserts a genuine fact issue exists as to whether Stevenson was Waste Management's employee at the time of the accident. In his summary-judgment motion Stevenson asserted there is no evidence that he was an employee of Waste Management at the time of the accident and therefore there is no evidence supporting the Waste Management Parties' affirmative defense based on the Act's exclusive-remedy provision.

The trial court granted the Waste Management Parties' summary-judgment motion, denied Stevenson's summary-judgment motion, and rendered a final judgment dismissing all of Stevenson's claims.

## II. ISSUES AND ANALYSIS

On appeal, Stevenson asserts that the trial court erred in granting the Waste Management Parties' summary-judgment motion and determining as a matter of law that Stevenson was an employee of Waste Management at the time of the accident. Under three issues, Stevenson argues (1) the trial court erred in disregarding the Master Agreement and determining as a matter of law that Waste Management was his employer; (2) the trial court erred in determining there is no material fact question as to whether Stevenson was Waste Management's employee; and (3) the trial court erred in determining that there is no material fact question as to whether Waste Management actually exercised control over the details of Stevenson's work at the time of the accident. Stevenson does not challenge the trial court's denial of his summary-judgment motion.

In a traditional motion for summary judgment, if the movants' motion and summary-judgment evidence facially establish its right to judgment as a matter of law, the burden shifts to the nonmovant to raise a genuine, material fact issue sufficient to defeat summary judgment. *M.D. Anderson Hosp. & Tumor Inst. v.*

3

*Willrich*, 28 S.W.3d 22, 23 (Tex. 2000). In our de novo review of the trial court's summary judgment, we consider all the evidence in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not. *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006). The evidence raises a genuine issue of fact if reasonable and fair-minded jurors could differ in their conclusions in light of all of the summary-judgment evidence. *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007).

For this court to affirm the trial court's judgment, the summary-judgment evidence conclusively must show that Stevenson was Waste Management's employee at the time of the accident. *See Raynor v. Moores Mach. Shop, LLC*, 359 S.W.3d 905, 911 (Tex. App.—Houston [14th Dist.] 2012, no pet.). The Waste Management Parties assert that the summary-judgment evidence conclusively establishes Stevenson's status as an employee, and Stevenson argues that the summary-judgment evidence raises a genuine issue of material fact on this point.

## A.   The Act's Exclusive-Remedy Provision

"Recovery of workers' compensation benefits is the exclusive remedy of an employee covered by workers' compensation insurance coverage . . . against the employer or an agent or employee of the employer for . . . a work-related injury sustained by the employee." Tex. Lab. Code Ann. § 408.001(a) (West, Westlaw through 2017 1st C.S.). Presuming for the sake of argument that Stevenson was Taylor Smith's employee at the time of the accident, this status would not preclude Stevenson from also being Waste Management's employee at the time of the accident, and thus subject to the Act's exclusive-remedy provision as to Waste Management. *See Garza v. Exel Logistics, Inc.*, 161 S.W.3d 473, 475 (Tex. 2005). Under the Act, unless otherwise specified, "employer" means "a person who

4

makes a contract of hire, employs one or more employees, and has workers' compensation insurance coverage." Tex. Lab. Code Ann. § 401.011(18) (West, Westlaw through 2017 1st C.S.). In the Act, the Legislature has defined "employee" as "each person in the service of another under a contract of hire, whether express or implied, or oral or written." *Id*. § 401.012(a) (West, Westlaw through 2017 1st C.S.).

## B.    The Garza *Case*

In the *Garza* case, the Supreme Court of Texas addressed whether an employee of a temporary-employment agency also served as an employee of the agency's client at the time of the accident for the purposes of the Act's exclusive-remedy provision. *See id*. at 474–77. The contract between the agency and the client did not address whether employees furnished to the client would be the client's employees. *See id*. at 474–77, 480–81. In this context, the *Garza* court stated as follows:

> This undisputed evidence establishes that at the time Garza was injured, he was working on [the client's] premises, in the furtherance of [the clients'] day-to-day business, and the details of his work that caused his injury were specifically directed by [the client]. Accordingly, for workers' compensation purposes, Garza was [a client] employee within the meaning of section 401.012 . . . at the time he was injured.

*Id*. at 477. The *Garza* court held that undisputed evidence of the following facts at the time of the accident proved Garza was an employee of the client: (1) Garza was working on the client's premises; (2) Garza was working in furtherance of the client's day-to-day business; and (3) the client specifically directed the details of Garza's work that caused his injury. In today's case, the Master Agreement addresses whether the employees Taylor Smith furnished to Waste Management are Waste Management employees, and at the time of the accident, Stevenson was

5

not working on Waste Management's premises. Thus, today's case does not fall within the scope of the *Garza* holding. *See id*. at 474–77, 480–81.

Nonetheless, the *Garza* court instructs that, in determining if a general employee of a temporary-employment agency is also an employee of a client company for the purposes of the Act, courts should consider "traditional indicia." *Id*. at 477. Using these markers, for Stevenson to have been Waste Management's employee at the time of the accident, Waste Management must have had the right to control the progress, details, and methods of operation of Stevenson's work. *See City of Bellaire v. Johnson*, 400 S.W.3d 922, 923–24 (Tex. 2013) (per curiam); *Limestone Prods. Distrib., Inc. v. McNamara*, 71 S.W.3d 308, 312 (Tex. 2002) (per curiam).

## C.    The **Love** Case

If no written contract addresses who has this right to control, we may look to evidence as to the actual exercise of control to determine who has the right to control. *See Newspapers, Inc. v. Love*, 380 S.W.2d 582, 590 (Tex. 1964). If a written contract addresses who has this right of control, the issue arises as to how much deference we should give to the contract. In *Love*, the Supreme Court of Texas concluded that a written contract expressly providing that a person is an independent contractor does not always conclusively disprove that the person is an employee. *See id*. at 591–92. According to the *Love* court, if a written contract expressly provides that a person is an independent contractor and does not vest the principal with the right to control the details of the person's work, we are to give the contract effect unless (1) the contract was a subterfuge from the beginning; (2) the parties modified the contract by a subsequent express or implied agreement; or (3) the principal's exercise of control over the details of the person's work was "so persistent" and the acquiescence in that exercise of control was "so pronounced as

6

to raise an inference that at the time of the [accident], the parties by implied consent and acquiescence had agreed that the principal might have the right to control the details of the work" (hereinafter the "*Love* Legal Standard"). *Id*. at 590, 592; *see Weidner v. Sanchez*, 14 S.W.3d 353, 373–74 (Tex. App.—Houston [14th Dist.] 2000, no pet.). Under the *Love* Legal Standard, a written contract in which the parties clearly say that one is an independent contractor is not always given conclusive effect. Even so, under this standard, courts still give such contracts some deference, and treat the person as an independent contractor absent proof of one of the exceptions to enforcement of the contract. *Love*, 380 S.W.2d at 591–92; *Weidner*, 14 S.W.3d at 373–74.

In *Exxon Corp. v. Perez*, the trial court refused to submit a question to the jury as to whether the plaintiff was the defendant's borrowed employee, in support of the defendant's affirmative defense that the Act's exclusive-remedy provision barred the plaintiff's negligence claim against the defendant. *See Exxon Corp. v. Perez*, 842 S.W.2d 629, 630 (Tex. 1992) (per curiam). The court of appeals held that the trial court did not err in this ruling because the contract between the defendant and the plaintiff's employer conclusively established that the plaintiff was not the defendant's borrowed employee. *See id*. The Supreme Court of Texas issued a per curiam opinion in *Perez*, holding that the trial court erred because the trial evidence raised a fact issue as to whether the plaintiff was the defendant's borrowed employee. *See id*. at 630–31. The *Perez* court cited the *Love* case favorably and did not purport to modify, abrogate, or disapprove of the *Love* Legal Standard. *See id*. We construe the *Perez* opinion as concluding that the trial evidence raised a fact issue under the *Love* Legal Standard, without changing the *Love* Legal Standard. *See Alice Leasing Corp. v. Castillo*, 53 S.W.3d 433, 440–41 (Tex. App.—San Antonio 2001, pet. denied). The Waste Management Parties cite

7

*Perez* for the proposition that a contract addressing the right to control a worker is not controlling. Under the *Love* Legal Standard, if the evidence proves one of the exceptions to enforcement of the contract, then the terms of the contract are not controlling. *See Love*, 380 S.W.2d at 591–92. Thus, the Waste Management Parties are correct that a contract addressing the right to control a worker is not necessarily determinative as to whether the worker is an employee. *See id*.

## D. *The Summary-Judgment Evidence*

The summary-judgment evidence includes the Master Agreement, which purports to bind Taylor Smith and Waste Management, and provides as follows:

> **[Taylor Smith] Responsibilities:** [Taylor Smith] is in the business of supplying trained and qualified temporary labor ("Personnel") to perform work as requested by Waste Management. [Taylor Smith] is solely responsible for performing all hiring, firing, discipline, training[,] and other responsibilities necessary to discharge its legal obligations **as the employer of the Personnel** supplied to Waste Management. [Taylor Smith] and Personnel **shall be independent contractors in respect of Waste Management and shall not be employees of Waste Management**. Furthermore, [Taylor Smith] and Personnel understand that they have no authority to make or imply any commitments which are binding upon Waste Management. [Taylor Smith] is solely responsible for all payments whatsoever required to be made to or in respect of its Personnel, including, without limitation, all wages, salaries and benefits (including health insurance and/or medical payments), all federal, state and local payroll taxes, and all Workers' Compensation insurance coverage and payments. Upon demand, [Taylor Smith] shall provide [Waste Management] with proof that such payments have been made. For any lawful reason (including, without limitation, an adverse result on drug and background screening) and without disclosing such reason to [Taylor Smith], Waste Management may request that [Taylor Smith] terminate Personnel's [sic] engagement at Waste Management effective immediately. Waste Management shall reimburse [Taylor Smith] for services performed and expenses incurred in accordance herewith up to the date of such termination notice.

. . .

[Taylor Smith] is obligated to ensure that Personnel supplied to Waste Management comply with all of [Waste Management's] health and safety requirements and are fully qualified and trained for the jobs they are being supplied to perform and that they have been given safety training that meets or exceeds the training Waste Management provides to its employees for the same or similar jobs.

. . .

This Agreement . . . constitutes the entire agreement and understanding between the parties and supersedes any prior agreement and understanding whether written or oral, relating to the subject matter of this Agreement except with respect to any effective nondisclosure agreement between the parties. This Agreement may be supplemented or amended by the parties only if done in writing and signed by both parties.[1]

The Waste Management Parties assert that the Master Agreement does not address whether Waste Management has the right to control the details and methods of operation of Stevenson's work. We disagree. Though the contract does not contain a statement that Waste Management lacks the right to control the details and methods of operation of Stevenson's work, the parties unambiguously agreed that the personnel Taylor Smith supplied would serve as independent contractors in respect of Waste Management and would not be Waste Management employees. One of the essential characteristics of an independent contractor is that the contractor does not submit to the control of another person as to the details of the contractor's work. *See Olivares v. Brown & Gay Engineering, Inc.*, 401 S.W.3d 363, 368 (Tex. App.—Houston [14th Dist.] 2013), *aff'd*, 461 S.W.3d 117 (Tex. 2015). The Master Agreement does not define either "independent contractor" or "employee." Whether we give these terms their plain, ordinary, and

---

[1] (emphasis added).

9

generally accepted meanings or their technical meanings, the parties' use of these terms shows that they agreed Waste Management would not have the right to control the details and methods of operation of Stevenson's work. *See City of Bellaire*, 400 S.W.3d at 923–24; *Texas A & M Univ. v. Bishop*, 156 S.W.3d 580, 584–85 (Tex. 2005); *Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121–22 (Tex. 1996); *Olivares*, 401 S.W.3d at 368.

The Waste Management Parties also cite *Draper v. American Rice, Inc*. *See* No. 01-09-00239-CV, 2010 WL 2991094, at *2–6 (Tex. App.—Houston [1st Dist.] Jul. 29, 2010, no pet.) (mem. op.) in support of their argument. Stevenson asserts that the *Draper* case is not on point because (1) the *Draper* contract contained different language that did not include an agreement that the personnel provided by the temporary agency would be independent contractors; and (2) the defendant in *Draper* presented specific, detailed, uncontroverted, and consistent summary-judgment evidence that the defendant, in fact, controlled the details of the plaintiff's work on the day of the plaintiff's injury. Crucially, though the Master Agreement states that the personnel provided by Taylor Smith "shall be independent contractors in respect of Waste Management," the contract in *Draper* did not say that the personnel furnished by the temporary-employment agency would be independent contractors, and the *Draper* contract stated that the personnel would not be "considered employees, agents, or independent contractors" of the client. *See id*. at *2. We conclude that *Draper* is not on point. *See id*. at *2–6.

The Waste Management Parties also assert that the Master Agreement provides that Taylor Smith personnel serve as independent contractors as to certain duties owed to Taylor Smith and employees as to Waste Management for the purposes of the Act's exclusive-remedy provision. According to the Waste

10

Management Parties, the part of the Master Agreement with the independent-contractor language does not apply to the activity in which Stevenson was engaging at the time of the incident. We disagree with this interpretation of the Master Agreement.

Rather than state that Taylor Smith personnel serve as independent contractors as to certain duties owed to Taylor Smith, the Master Agreement categorically states that "[Taylor Smith] and Personnel shall be independent contractors in respect of Waste Management and shall not be employees of Waste Management." In addition, no language in the contract provides that this part of the Master Agreement does not apply to the work performed by personnel supplied by Taylor Smith.

We conclude that the Master Agreement is a written contract expressly providing that Stevenson is an independent contractor and not a Waste Management employee and that the Master Agreement does not vest Waste Management with the right to control the details of Stevenson's work. *See Love*, 380 S.W.2d at 590, 592.

Stevenson testified as follows:

- There were some helpers that Waste Management said could not come back to the Waste Management facility.

- While a helper was out on a route the driver was in charge of the work that was done, and the driver had the right to tell the helper if the helper was doing the work improperly.

- The driver had the ability to delay when the helper had lunch.

- If the driver thought a helper was not doing the job, the driver could have the helper removed from the truck.

- The driver decided when the helpers could ride on the back of the truck.

- No one at Waste Management ever told Stevenson that he had the ability to tell the Waste Management driver what to do.

11

- Stevenson had seen drivers correct helpers who were doing something that violated their training.

- Based on what Stevenson understood, the route managers had the ability to tell him what to do and how to do his job. If Stevenson were the helper on a truck and the route manager said Stevenson had to change something that he was doing, Stevenson would have listened to the route manager.

Zelaya, the Waste Management employee who drove the truck, testified as follows:

- Once Stevenson had been working as a helper for a while, Stevenson knew what to do, and Zelaya did not have to tell Stevenson what to do.

- Before the accident Zelaya was not controlling what Stevenson was doing because Zelaya could not control what Stevenson did.

- At the time of the accident and in the ten to fifteen minutes before the accident, Zelaya was controlling Stevenson with respect to how to do the job, but Zelaya could not control him to make Stevenson stay on one side of the truck or to make him not walk close to the truck.

- Before they leave the yard Zelaya tells workers like Stevenson what they are going to do with Zelaya and how they are going to do it.

- After Zelaya and Stevenson finished the regular route, they went to do the "helper route," and Zelaya does not recall giving Stevenson any instructions or directions. At that time Zelaya could not control Stevenson because Stevenson was on the side of the street.

- When asked "you didn't control [Stevenson], you didn't provide him with any directions at that time, correct?" Zelaya answered "[c]orrect."

- Stevenson knew how to do the job of helper on a garbage truck, and Zelaya did not have to tell Stevenson what to do.

- It was part of Zelaya's job to supervise the temporary helpers that were on Zelaya's truck.

- At all times when Zelaya was out on the truck, Zelaya had the right to tell the helpers how to do their work and what to do.

Tracy Smith, the owner of Taylor Smith, testified as follows:

- The words in the Master Agreement matter.

- The Master Agreement is a real contract, not a sham, and not a subterfuge.

- When Taylor Smith sends the personnel to work they are managed and fired by Taylor Smith's client.

- Once Taylor Smith puts employees like Stevenson on assignment, Taylor Smith does not manage them, tell them what to do, or give them directives.

- With regard to the helper work Taylor Smith employees perform for Waste Management, once the employees leave the yard there is no Taylor Smith supervisor with them.

- Once the Taylor Smith employees leave the yard Taylor Smith considers the Waste Management route manager and the Waste Management driver to be the supervisors of the people acting as helpers.

- Once a Taylor Smith employee goes to work at Waste Management, they work for Waste Management, and they are managed and disciplined by the client. Waste Management can call Taylor Smith and ask Taylor Smith to give a worker a reprimand.

- The Waste Management supervisor told Stevenson what to do.

- The Waste Management route manager and the Waste Management driver "direct all of the work for the helpers." Once the helpers are on the truck, the route manager and the driver are telling them what to do until they return to the yard and clock out.

- Taylor Smith tells the helpers that they are to do what the driver says to do and that they are to do what the route manger says to do.

- Regardless of what the Master Agreement says, Waste Management had the right to control the details of the work of the helpers who are out on a route.

William Ward Oldner, Waste Management's corporate representative, testified as follows:

- Waste Management is not aware of any documentation supporting the statement that Stevenson was a Waste Management employee at the time of the incident.

- Waste Management thinks Stevenson was a Waste Management employee because Waste Management controls Stevenson's actions and duties while he is on a truck or in the scope of his work at Waste Management.

### E. Genuine Fact Issue Precluding Summary Judgment

Under the *Love* Legal Standard, the summary-judgment evidence raises a genuine fact issue as to whether Stevenson was an employee of Waste Management at the time of the accident. *See Perez*, 842 S.W.2d at 630–31; *Love*, 380 S.W.2d at 591–92; *Hoffman v. Trinity Indus., Inc.*, 979 S.W.2d 88, 90–92 (Tex. App.—Beaumont 1998, pet. dism'd by agr.). Accordingly, we sustain Stevenson's first and second issues, reverse the trial court's judgment, and remand this case to the trial court.[2]


/s/     Kem Thompson Frost
Chief Justice

Panel consists of Chief Justice Frost and Justices Christopher and Jamison.[3]

---

[2] We need not and do not address the third issue.

[3] Justice Jamison was assigned to the panel for this case and participated during oral argument, but she is no longer a justice on the Fourteenth Court of Appeals, and she did not participate in deciding this case. The remaining panel members have decided this appeal. *See* Tex. R. App. P. 41.1(b) ("After argument, if for any reason a member of the panel cannot participate in deciding a case, the case may be decided by the two remaining justices.").